**ADVANCED MATERIALS, INC., Appellant,**

v.

**William J. PERRY, Secretary of Defense, Appellee.**

No. 96–1028.

United States Court of Appeals, Federal Circuit.

Feb. 24, 1997.

Manfred Sternberg, Jr., Houston, TX, for appellant. With him on the brief was Leon Rudloff, Metairie, LA.

Laureen D. Kapin, Trial Attorney, Commercial Litigation Branch, Civil Division, Department of Justice, Washington, D.C., for appellee. With her on the brief were Frank W. Hunger, Assistant Attorney General, David M. Cohen, Director, and Richard E. Rice, Assistant Director. Of counsel on the brief was Phillip Hunter, Attorney Advisor, Office of Chief Counsel, U.S. Army, Chemical and Biological Defense Command, Aberdeen Proving Ground, MD.

Before MICHEL, Circuit Judge, FRIEDMAN, Senior Circuit Judge, and SCHALL, Circuit Judge.

FRIEDMAN, Senior Circuit Judge.

A cost plus fixed fee government procurement contract specified the maximum amount the government would pay and provided a procedure whereby a contractor could exceed the cost limitation. The Armed Services Board of Contract Appeals held that the appellant's failure to comply with that procedure barred it from obtaining amounts in excess of the specified maximum that it incurred in performing the contract. We affirm.

## I.

In April 1991, the appellant Advanced Materials, Inc. ("Advanced Materials" or "the company") entered into a contract to design and develop decontamination kits for the Army. The contract price was cost plus a fixed fee, and the contract contained a schedule showing the estimated total cost of performance. As modified, the contract was "fully fund[ed]" at $825,262.00. The total funding subsequently was increased to $1,085,712.

The contract incorporated by reference the "Limitation of Cost" provision (cost limitation provision) in Federal Acquisition Regulation, 48 C.F.R. § 52.232–20. That provision stated that "[t]he Government is not obligated to reimburse the contractor for costs incurred in excess of (i) the estimated cost specified in the Schedule." The provision required the contractor to

> notify the Contracting Officer in writing whenever it has reason to believe that—(1) [t]he costs the Contractor expects to incur under this contract in the next 60 days, when added to all costs previously incurred, will exceed 75 percent of the estimated cost specified in the Schedule; or (2) [t]he total cost for the performance of this contract ... will be either greater or substantially less than had been previously estimated.

The provision further stated:

As part of the notification, the Contractor shall provide the Contracting Officer a revised estimate of the total cost of performing th[e] contract. . . . The Contractor is not obligated to continue performance under th[e] contract . . . or otherwise incur costs in excess of the estimated cost specified in the Schedule, until the Contracting Officer (i) notifies the Contractor in writing that the estimated cost has been increased and (ii) provides a revised estimated total cost of performing th[e] contract.

The provision also provided:

In the absence of the specified notice, the Government is not obligated to reimburse the Contractor for any costs in excess of the estimated cost. . . .

The contract was funded incrementally, *i.e.,* for stated consecutive periods. The contract was awarded on April 4, 1991 and had a completion date of November 24, 1992. On December 19, 1991, March 13, 1992 and August 14, 1992, Advanced Materials gave the Army written notification that it had reached seventy-five percent of the contract's estimated cost. It did not give any revised estimate or indicate that the cost would exceed that percentage. Instead, Advanced Materials' final contract status reports advised the Army that expenditures were within the contract's estimated costs. Sometime after August 22, 1992, Advanced Materials delivered the kits and the Army paid the balance of the contract price.

In mid-November, after the kits were delivered but before Advanced Materials had completed performance of the contract, a company Vice–President (Hoefer) verbally told the contracting officer that Advanced Materials had a cost overrun on the contract. The contracting officer replied that the contract required written notification. Almost a month later, after the November 24, 1992 contract completion date had passed, the company wrote two letters stating that there had been cost overruns and that it anticipated an additional overrun to complete final reports under the contract.

On December 21, 1992, the contracting officer gave Advanced Materials written directions to stop work and to incur no additional costs. He stated that the government was not obligated to pay costs in excess of the amount specified in the contract until he had notified the company that the estimated costs had been increased and provided a revised total estimated cost of performance. The contracting officer also stated that "the Government is considering the allocation of additional funds to this contract."

Four months later the contracting officer informed the company that he would not authorize additional funds without assurance from the Defense Contract Audit Agency (audit agency) that the additional costs were "properly allocable and allowable." The audit agency concluded that the additional costs were unreasonable. After reviewing the report and the company's objections thereto, the contracting officer notified the company that he agreed with the conclusion that the company unreasonably had exceeded the contract's estimated cost and he therefore disallowed the excess costs requested.

The company then submitted to the contracting officer a claim for $191,013. The contracting officer stated that he could not resolve certain issues relating to direct and indirect costs, and referred those matters to an administrative contracting officer. The latter wrote the company that the government owed it no additional money under the contract, but that "the Army is agreeable to increase funding if appropriate to cover allowable, allocable and reasonable costs incurred prior to 21 Dec[ember] 1992." She requested the company to submit its final voucher and closing statement so that she could make a final determination of such costs.

Advanced Materials deemed the contracting officer's failure to rule on its claim a denial thereof, and filed a complaint with the Board. It contended that the cost limitation provision was unenforceable because it had no reason to foresee the overrun. Furthermore, it asserted that the government was estopped from relying on the provision because the contracting officer and the administrative contracting officer induced the company to continue performing the contract by representing to it that the government would consider allocating additional funds. It also

alleged that the government had waived the provision by indicating that it would fund the overrun.

After an evidentiary hearing, the Board denied the claim, ruling that the cost limitation provision barred recovery of costs exceeding the amount stipulated in the contract. The Board found that the company "knew or had reason to know its year-to-date direct and G & A [general and administrative] costs as it was performing contract 80 and that no unforeseen event prevented AMI from seeking additional funds or stopping work before exceeding the funding limit." The Board held that the company had not proved its claim that the government was estopped from relying on the cost limitation provision.

## II.

A. Under the unambiguous language of the cost limitation provision, the estimated cost shown in the contract constitutes a ceiling on the government's contractual liability. The contractor may obtain an increase in the estimated cost subject to the following conditions: (1) that the contractor notify the government in writing when it anticipates that within the next sixty days it will exceed seventy-five percent of the estimated cost and provide a revised estimate; (2) that the contracting officer notify the contractor in writing that the estimated cost has been increased by a specific amount; and (3) that until the contracting officer gives such notice, the contractor is not required to continue performance or incur costs that exceed those estimated in the contract.

Advanced Materials did not satisfy those conditions for obtaining an increase in the estimated cost. It did not give written notice two months before it expected that its costs would exceed seventy-five percent of the estimate. The three written notices it did give stated only that it had reached the seventy-five percent figure, not that it would exceed that amount, and gave no revised estimate of the total cost of completion. The contracting officer neither notified Advanced Materials that the "estimated cost had been increased"—to the contrary, he stated that the government was not obligated to pay any additional costs—nor did he provide "a revised estimated total cost of performing th[e] contract."

■ Advanced Materials points to the contracting officer's statements that the government was "considering" the allocation of additional funds to the contract, and to the administrative contracting officer's statement that the Army was "agreeable to increase funding if appropriate" to cover proper additional costs. These statements merely indicated a willingness by the government to consider increasing the costs if the facts established the contractor's entitlements thereto. They fall far short of the requirements that, for the contractor to obtain additional costs, the contracting officer must both notify the contractor that the estimated costs "ha[ve] been increased" and state the revised estimated total cost. As the cost limitation provision stated "[i]n the absence of the specified notice, the Government is not obligated to reimburse the contractor for any costs in excess of the estimated cost."

The requirements of the cost limitation provision protect both the contractor and the government. The ability to obtain government approval of additional costs before incurring them protects the contractor from discovering, after performing the contract at greater cost than anticipated, that its work has been financially disastrous because the government will not pay the additional costs. It also relieves the contractor, if such advance approval is not given, from its obligation to complete the contract or to incur costs in excess of the estimate. The limitation of the government's liability to the estimated cost stated in the contract (unless additional costs are authorized) protects the government from having to pay more than it had anticipated and set aside for the contract if the contractor's costs of performance exceed the estimate. It also gives the government the choice whether to incur additional costs for the contract or to have the contract terminated. It is therefore important that the requirements of the cost limitation provision be followed.

The thrust of the cost limitation is prospective, *i.e.*, the parties are to determine their

future course of dealing before the estimated cost has been exceeded and, if performance is to continue, to set the amount of the additional cost. The course Advanced Materials followed in this case, however, in effect makes the operation of the cost limitation provision retroactive rather than prospective, because the company is seeking additional compensation after it has incurred the additional cost but without prior government approval. The cost limitation provision does not authorize such adjustments.

B. The grounds upon which Advanced Materials seeks to excuse the noncompliance with the cost limitation provision are unpersuasive.

■ 1. Advanced Materials first notes that the seventy-five percent reporting requirement applies only "whenever it has reason to believe that [t]he costs the contractor expects to incur . . . will exceed 75 percent of the estimated cost," and contends that during the performance of the contract it had no "reason to believe" that it would exceed the estimated cost. According to the company, this was so because it had changed accounting firms and the accounting system it utilized did not enable it to make that calculation.

The Board, however, found that the company "knew or had reason to know its year-to-date direct and G & A costs . . . and that no unforeseen event prevented [it] from seeking additional funds or stopping work before exceeding the funding limit." The record supports that finding.

Advanced Materials recognized the inadequacy of its accounting system, and should have adjusted its cost calculations to reflect the impact of postponed and canceled contracts. The company also conceded that its cost overrun resulted partially from its lack of familiarity with procurement procedures. The contractor's burden of proof regarding foreseeability carries with it an "attendant duty to maintain an accounting and financial reporting system to secure timely knowledge of probable overruns before costs are incurred. The contractor is also responsible for failing to properly evaluate the financial data which the accounting system does generate." *Lansdowne Steel & Iron Co.,*

ASBCA No. 41110, 95–1 BCA ¶ 27506 at 137,081, 1995 WL 74990 (Feb. 13, 1995) (citation omitted).

Advanced Materials relies on *RMI, Inc. v. United States,* 800 F.2d 246 (Fed.Cir.1986) for the proposition that an overrun is not foreseeable if there is no evidence that the contractor's accounting system revealed it. *RMI* does not stand for that proposition. In *RMI* the government terminated a contract with a similar cost limitation provision, and the contractor sought reimbursement for overrun costs. The Board denied the claim on the ground that the contractor had not carried its burden of proof that the cost overrun was not reasonably foreseeable during the performance of the contract. This court vacated that decision and remanded to the Board for further proceedings, because the Board's findings were inadequate, the findings did not support the conclusions, and the Board improperly had considered certain evidence. *RMI,* 800 F.2d at 250.

In so holding the court quoted the following statement by the Court of Claims in *General Electric Company v. United States,* 194 Ct.Cl. 678, 440 F.2d 420, 425 (1971): "If a 'contractor, through no fault or inadequacy on its part, has no reason to believe, during performance, that a cost overrun will occur and the sole ground for the contracting officer's refusal [to fund a cost overrun] is the contractor's failure to give proper notice of the overrun' the contractor is entitled to have the overrun funded." *RMI,* 800 F.2d at 248. In this case, however, the contractor had reason to believe that its cost would exceed the estimate, and the contractor's failure to give proper notice of the overrun was not "the sole ground" for the contracting officer's refusal to fund it.

2. The company next contends that the government is estopped from relying on the cost limitation provision because of the letters the government sent indicating that it would consider allocating additional funds and would do so if the increased costs were reasonable, allocable and allowable. This court has set forth a four element test to establish an estoppel claim in this situation:

(1) [T]he party to be estopped must know the facts, *i.e.,* the government must know

of the overrun; (2) the government must intend that the conduct alleged to have induced continued performance will be acted on, or the contractor must have a right to believe the conduct in question was intended to induce continued performance; (3) the contractor must not be aware of the true facts, *i.e.*, that no implied funding of the overrun was intended; and (4) the contractor must rely on the government's conduct to its detriment.

*American Elec. Lab., Inc. v. United States,* 774 F.2d 1110, 1113 (Fed.Cir.1985).

 As the Board correctly ruled, Advanced Materials failed to prove these factors. The government did not know of the overrun until, at the earliest, November 17, 1992, when Hoefer verbally told the contracting officer about it. Any cost overruns before that date were not known to the government and the government cannot be estopped from relying on the cost limitation provision with respect to them. The Board found that "the company offered no proof that it incurred any costs under contract 80 after 21 December 1992." The government's statements that it might fund the overrun, even if they related to the intervening thirty-four day period, were not sufficient to show either that the government intended thereby to induce continued performance or that the company relied on those statements to its detriment.

 3. Finally, the company argues that the government waived the cost limitation provision. Once again it relies on the government's letters indicating a possible funding increase. Those letters, however, continued to assert that no further money was owed to the company. The Board correctly held that the government had not waived the cost provision.

### CONCLUSION

The decision of the Board denying Advanced Materials' claim for its overrun costs is

*AFFIRMED.*