**KMS FUSION, INC., Plaintiff,**

v.

**The UNITED STATES, Defendant.**

No. 95–46C.

United States Court of Federal Claims.

Nov. 19, 1997.

Timothy Sullivan, Washington, DC, for plaintiff. Katherine S. Nucci and Martin R. Fischer, Adduci, Mastriani & Schaumberg, L.L.P., of counsel.

Sheryl Floyd, Washington, DC, with whom was Assistant Attorney General Frank W. Hunger, for defendant. Tom West and Richard Blakely, United States Department of Energy, of counsel.

## OPINION

MILLER, Judge.

This case is before the court on an application for attorneys' fees and expenses pursuant to the Equal Access to Justice Act (the "EAJA"), 28 U.S.C. § 2412 (1994).

## FACTS

The dispute preceding this EAJA application was resolved via a bench ruling after trial issued by the court pursuant to RCFC 52(a). In its ruling the court noted that the background and facts in the underlying litigation were strikingly similar to those addressed by the court in its published opinion in *KMS Fusion, Inc. v. United States*, 36 Fed. Cl. 68 (1996), *aff'd*, 108 F.3d 1393 (1997) (Table).[1] Accordingly, for the purpose of placing this EAJA application in the proper context, a summary of only those facts and background issues relevant to an award of attorneys' fees is provided.

The United States Department of Energy ("DOE") awarded Contract No. DE–AC08–87DP10560 to KMS Fusion, Inc. ("plaintiff"), on May 1, 1987.[2] This was a level-of-effort contract with a three-year duration and two separate one-year options. Plaintiff was to be compensated on a cost-plus-fix-fee basis.

The contract was for the purpose of research and development in support of DOE's Inertial Confinement Fusion Program. Much of the research and development centered around projects involving the radioactive isotope of hydrogen known as tritium. Because of its high level of radioactivity, tritium is regulated by the Nuclear Regulatory Commission.

By January 1990 DOE had determined that its needs with respect to the Inertial Confinement Fusion Program had changed. DOE planned to recompete plaintiff's contract that was set to expire on April 30, 1990. However, DOE determined that if it were to send out a request for proposals, the process of finding a new contractor would extend well beyond the April 30, 1990 termination date of plaintiff's contract. Thereafter, DOE and plaintiff entered into negotiations to modify the extant contract to ensure an efficient transition and to avoid a period during which no work was performed on the Inertial Confinement Fusion Program.

The parties negotiated successfully Modification A022 ("Mod 22") on April 30, 1990. Under the terms of Mod 22, DOE obtained two options whereby it could increase unilaterally the level of effort and limitation of funds clauses. Option A permitted DOE to extend performance through December 31, 1990. Option B extended performance until March 31, 1991. Upon reaching agreement on Mod 22, DOE invoked Option A and extended the contract with plaintiff through December 31, 1990.

DOE also embarked upon its plan to recompete the contract when it issued a request for proposals on August 2, 1990. By December 27, 1990, plaintiff had received notification that the new contract was being awarded to General Atomics, Inc. On December 28, 1990, DOE informed plaintiff that it was invoking Option B to Mod 22 and extending the original contract until March 31, 1991.

DOE subsequently directed plaintiff to develop a close-out plan through which plaintiff would articulate the manner in which it would return all DOE property and transfer any tritium in its possession to the new contractor. On January 10, 1991, plaintiff, pursuant to Clause 37(b) of the contract, informed DOE of a limitation of costs ("LOC") and funds ("LOF") problem in that it had exceeded 75% of the funds allocated to the contract. Moreover, plaintiff ceased all performance of the contract. The parties then entered into negotiations that culminated in Modification A035 ("Mod 35"), signed on August 8, 1991. In accordance with Mod 35, contract performance was extended through December 31, 1991.

Pursuant to the regulations governing cost-plus-fix-fee contracts, plaintiff was required to submit annual proposals detailing costs incurred. Each proposal would be audited by the Defense Contract Audit Agency (the "DCAA"). Plaintiff submitted reports claiming that it was owed $3,169,294.00.

---

1. This case involved plaintiff's breach of contract claim against the United States Department of Energy seeking to extend performance beyond 1991 of the same contract at issue in the case at bar.

2. The contract initially was administered through DOE's Nevada office. However, on November 11, 1988, the contract was transferred to DOE's San Francisco, California office and renumbered DE–AC03–87DP10560.

However, after auditing plaintiff's reports for 1987 through 1991, the DCAA determined on March 7, 1996, that plaintiff was required to reimburse DOE $5,808,326.00. Accordingly, DOE's contracting officer denied plaintiff's claim on January 3, 1995, and asserted that plaintiff was required to reimburse DOE $5,808,326.00.

Plaintiff subsequently filed suit in the United States Court of Federal Claims appealing the denial of both the $3,169,294.00 claim and the $5,808,326.00 claim. At the outset of trial, defendant conceded an issue involving environmental remediation at the Chemform, Inc. (Chemform), site utilized by plaintiff. In its bench ruling, the court found that plaintiff was entitled to recover $1,621,-413.00 plus interest.[3] The bench ruling delineated five discrete issues: 1) waiver of the LOC/LOF clauses; 2) general and accounting ("G & A"); 3) indirect labor costs; 4) severance pay; and 5) advertising. The court's judgment in favor of plaintiff was offset by the $2 million partial settlement that plaintiff had obtained from DOE in state court litigation, as previously agreed. After prevailing on some of its claims in the underlying lawsuit, plaintiff filed this application seeking $163,164.90 in attorneys' fees and $52,676.13 in expenses.[4]

## DISCUSSION

■ "The purpose of the EAJA is 'to eliminate legal expenses as a barrier to challenges of unreasonable government action.'" *Community Heating & Plumbing Co. v. Garrett*, 2 F.3d 1143, 1145 (Fed.Cir.1993) (quoting *Ellis v. United States*, 711 F.2d 1571, 1576 (Fed.Cir.1983)). The EAJA serves as "a specific waiver of sovereign immunity to enable persons who prevail in certain suits brought against the government to an award of attorney fees incurred in challenging the government's action in court." *Chiu v. United States*, 948 F.2d 711, 714 (Fed.Cir.1991). As with any waiver of sovereign immunity, the EAJA is to be construed strictly. *See Ruckelshaus v. Sierra Club,*

463 U.S. 680, 685, 103 S.Ct. 3274, 3277–78, 77 L.Ed.2d 938 (1983).

■ The EAJA requires "1) that the claimant be a 'prevailing party'; 2) that the Government position was not 'substantially justified'; 3) that no 'special circumstances make an award unjust'; and 4) ... that any fee application be submitted ... within 30 days of final judgment ... and be supported by an itemized statement." *Commissioner, INS v. Jean*, 496 U.S. 154, 158, 110 S.Ct. 2316, 2319, 110 L.Ed.2d 134 (1990). Once a litigant files a fee application, the burden is on the Government to demonstrate that its position was substantially justified. *See Doty v. United States*, 71 F.3d 384, 385 (Fed. Cir.1995) (citing *Gavette v. OPM*, 808 F.2d 1456, 1465–66 (Fed.Cir.1986) (*en banc*)); *Bailey v. United States*, 721 F.2d 357, 359 (Fed.Cir.1983); *Ellis*, 711 F.2d at 1575. In determining whether the Government's position was substantially justified, it is the court's responsibility to examine thoroughly the entire history of the dispute, not just the litigation phase. *See Jean*, 496 U.S. at 158–59, 110 S.Ct. at 2318–19; *Gavette*, 808 F.2d at 1467 ("[I]t is now clear that the position of the United States includes the position taken by the agency at the administrative level.").

1. *Entitlement*

Defendant has conceded that plaintiff meets the statutory eligibility requirements of section 2412(d)(2)(B) governing net worth and number of employees. *See* Def's Br. filed Sept. 22, 1997, at 1. Defendant has also conceded that plaintiff is a prevailing party within the meaning of the EAJA. *See id.* In view of the Federal Circuit precedent concerning "a prevailing party," defendant was correct to concede this issue. Plaintiff prevailed on two and one half of six issues—if one takes into account the Chemform issue conceded by defendant. Although "[i]t is not necessary to succeed on every issue to meet the criterion of 'prevailing party' as contemplated by the EAJA," *Naekel v. Department*

---

**3.** Defendant notes that as of April 30, 1997, the amount of the judgment was $2,090,182.54.

**4.** Acknowledging that certain expenses it has requested are duplicative of the Bill of Costs sub-

mitted to the Clerk of the Court, *see infra* p. 18, plaintiff has asked that any portion of the Bill of Costs granted by the Clerk be deducted from its claim for expenses.

of Transp., Federal Aviation Administration, 884 F.2d 1378, 1379 (Fed.Cir.1989) (citing H.R.Rep. No. 1418, 96th Cong., 2d Sess. 11, *reprinted in* 1980 U.S.C.A.A.N. 4953, 4984, 4990), in order to receive an EAJA award, plaintiff must comply with each element articulated in 28 U.S.C. § 2412(d)(1)(A), which provides:

> Except as otherwise specifically provided by statute, a court shall award to a prevailing party other than the United States fees and other expenses ... incurred by that party in any civil action (other than cases sounding in tort), including proceedings for judicial review of agency action, brought by or against the United States in any court having jurisdiction of that action, unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.

Defendant thus must demonstrate either that its position was substantially justified or that special circumstances preclude an award. If defendant prevails with respect to either of these elements, plaintiff may not recover.

■ Because defendant has failed to raise any special circumstances that would serve as a bar to plaintiff's potential recovery, whether or not the Government's position was substantially justified will be dispositive. In reviewing the Government's conduct, the court must bear in mind that the EAJA was not intended by Congress to serve as a mandatory fee shifting device. *See Gavette,* 808 F.2d at 1465. Instead, Congress enacted the EAJA to serve as a mechanism whereby certain small businesses or individuals can seek vindication from unreasonable government conduct without fear of the costs associated with litigation. *See* H.R.Rep. No. 1418, 96th Cong., 2d Sess. 5–6, *reprinted in* 1980 U.S.C.A.A.N. 4984, 4984. It is for this same reason that Congress placed the burden of demonstrating substantial justification squarely on the Government. *Id.* at 18, 1980 U.S.C.A.A.N. at 4997.

■ The Supreme Court has addressed the meaning of "substantially justified" and instructs that

> as between the two commonly used connotations of the word "substantially," the one most naturally conveyed by the phrase before us here [substantially justified] is not "justified to a high degree," but rather "justified in substance or in the main"— that is, justified to a degree that could satisfy a reasonable person. That is no different from ... [a] reasonable basis in law and fact....

*Pierce v. Underwood,* 487 U.S. 552, 565, 108 S.Ct. 2541, 2550 (1988). In applying this standard, the Federal Circuit directs the trial court to examine "the entirety of the government's conduct and make a judgment call whether the government's overall position had a reasonable basis in both law and fact." *Chiu,* 948 F.2d at 715. This standard of review encompasses the Government's conduct during both the litigation and agency level phases of the dispute. *See Doty,* 71 F.3d at 386. Furthermore, that plaintiff prevailed on two and one-half issues does not mandate that an EAJA award be granted. A trial court is required to rule on an EAJA application "independent from that of the merits phase." *Federal Election Comm'n v. Rose,* 806 F.2d 1081, 1090 (D.C.Cir.1986).

*1) Settlement*

■ Defendant maintains that its settlement of many of the outstanding issues prior to trial should not be used as evidence that its position was not substantially justified. When settlement negotiations commenced in June of 1996, over 30 discrete issues were in dispute. Through diligent work on behalf of both parties, the number of issues was reduced significantly. Plaintiff insists that, because defendant made the lion's share of the concessions, its position could not have been substantially justified.

The court is cognizant of the chilling effect that would result from a rule of law whereby the Government makes itself vulnerable to an EAJA award when it enters into settlement negotiations. Under such a decisional premise, the Government would be absurd to ever agree to settle any claims. The court therefore rejects plaintiff's argument that, due to defendant's settlement of what plaintiff characterizes as 78% of the case prior to trial, the Government's litigation position was not substantially justified. Instead, the court exam-

ines the substance of plaintiff's contention that defendant should have resolved these claims earlier. "To hold otherwise would not only distort the truth but penalize and thereby discourage useful settlements." *Pierce,* 487 U.S. at 568, 108 S.Ct. at 2552.

The record reveals that as the parties prepared their respective cases for trial, both sides conceded certain issues. Plaintiff argues that defendant's significant monetary concessions render its position less than substantially justified. However, many of defendant's concessions resulted from having retained Price Waterhouse, L.L.P., for the purpose of providing expert testimony at trial. In its bench ruling, the court found the Price Waterhouse expert's testimony to be determinative on several issues. As an ancillary benefit of having retained Price Waterhouse, defendant was able to obtain information obviating the need to try several other accounting issues. In these circumstances defendant's decision to abandon certain claims as it developed its case does not constitute a lack of substantial justification. Rather, defendant's willingness to settle these issues serves as an example of the proper use of the fruits of discovery. The court finds that, as to the issues settled, defendant's pretrial position was substantially justified.

### 2) *Chemform*

█ Just as defendant's actions regarding the issues settled prior to trial constitute an admirable example of the manner in which the discovery process serves to cull out unnecessary issues, its behavior pertaining to the Chemform issue stretches to the opposite end of the reasonableness spectrum. During settlement negotiations the parties were unable to resolve the issue of whether plaintiff's claim for reimbursement of $359,610.00 incurred for site studies and environmental remediation at the Chemform site in Broward County, Florida, was reasonable and allowable. Defendant argued that plaintiff could not recover these costs because plaintiff had engaged in "environmental wrongdo-

ing" during the period at issue. Plf's Br. filed Aug. 11, 1997, at 10. The Chemform issue appears to be unique in that defendant fleshed it out incident to trial. Based on the pretrial filings, the court advised defendant that this issue was ripe for concession. Although defendant conceded this issue during its opening statement on the first day of trial, defendant has made no effort to justify why its position changed so abruptly.

Plaintiff has posited that defendant's entire argument was based on "speculation and innuendo." Plf's Br. filed Aug. 11, 1997, at 12. The court agrees with this characterization. As a starting point, defendant was unable to produce evidence supporting its allegation of environmental wrongdoing. Second, plaintiff asserts correctly that defendant was unable to produce any pertinent statute or regulation supporting its contention. Moreover, after defendant conceded the issue, the parties entered into a stipulation agreement addressing the potential problems relating to the Environmental Protection Agency's involvement in the Chemform site. Such an agreement was the proper course of action and could have been entered into without the Government unnecessarily invoking the specter of the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, ("CERCLA"), 42 U.S.C. §§ 9601—9675 (1994). Defendant's position with respect to the Chemform issue was not substantially justified.

### 3) *Limitation of costs/limitation of funds*

█ Plaintiff prevailed on the issue of whether the Government had waived its rights to enforce the LOC/LOF clauses of the contract. However, prevailing in the underlying litigation is not determinative of whether the Government's position was or was not substantially justified. *See e.g., Gava v. United States,* 699 F.2d 1367, 1371 (Fed.Cir.1983) (noting that "[t]he fact that the government lost its case in the Court of Claims does not establish that the government's litigating position before the court was not substantially justified.").[5] In its

---

5. The *Gava* court was addressing the merits of a fee application brought pursuant to an earlier version of the EAJA. Nonetheless, the fact that

the Government lost its case is not dispositive on the issue of whether a fee award is merited.

bench ruling, the court stated that it did not view the issue as one of waiver. In fact, the court stated that, although defendant's evidence that DOE did not waive the LOC/LOF clauses was accepted, case law interpreting the LOC/LOF clauses permitted the contracting officer to "make a representation that will affect the contract's total estimated costs and available funding[,] assuming that funds have been appropriated to DOE for contracting and are therefore available...." Transcript of Proceedings, *KMS Fusion, Inc. v. United States,* No. 95–46C, at 1,017 (Fed. Cl. Feb. 7, 1997). The evidence established that DOE had done just that by making numerous representations to plaintiff that the necessary funds would be available. In the face of this evidence, defendant's position was not substantially justified. Moreover, defendant is asking the court to discount evidence from a DOE witness upon whom the court heavily relied in finding for defendant in the merits trial. While defendant's discounting of this evidence may be acceptable advocacy, it is not respectable advocacy.

The Supreme Court has stated explicitly that an EAJA application is not an occasion to engage "in a second major litigation." *Hensley v. Eckerhart,* 461 U.S. 424, 437, 103 S.Ct. 1933, 1941, 76 L.Ed.2d 40 (1983). Despite this admonition defendant has used its EAJA brief as an opportunity to relitigate the LOC/LOF issue, and defendant's arguments remain as unpersuasive and lacking in substantial justification as they were at trial. Defendant has also brought to the court's attention the case of *Advanced Materials, Inc. v. Perry,* 108 F.3d 307 (Fed.Cir.1997). Defendant devotes significant attention in its brief to discussing why *Advanced Materials* renders the court's bench ruling erroneous. The court need not address any of these arguments, as it is impossible—as much as the court could profit from the power of clairvoyance—to divine forthcoming Federal Circuit decisions prior to their issuance. The court can do no more than apply the law that exists at the time it renders its decision. *Bradley v. Richmond Sch. Bd.,* 416 U.S. 696, 711, 94 S.Ct. 2006, 2016, 40 L.Ed.2d 476 (1974) (addressing the retroactive application of statutes). Defendant's position pertaining to the LOC/LOF issue was not substantially justified.

### 4) *Other issues*

Defendant prevailed on the issues of G & A, indirect labor costs, and advertising, so that plaintiff cannot be deemed a prevailing party as contemplated by the EAJA for the purposes of these issues. The parties agree that the issue of severance resulted in a partial victory for each side. The court finds that each party had a valid claim as to severance pay. Consequently, defendant's position was not without substantial justification.

### 2. *Quantum*

### 1) *The proper pro rata award*

Having determined that plaintiff is a prevailing party as contemplated by the EAJA on the Chemform and LOC/LOF issues, the court must next determine the proper quantum of award to which plaintiff is entitled.

Plaintiff asserts that it is entitled to all of its reasonable attorneys' fees because it achieved "excellent" results in the litigation. *See Hensley,* 461 U.S. at 435, 103 S.Ct. at 1940 (stating that applicant who achieves "excellent" results may be entitled to all of its reasonable attorneys' fees). In support of this contention, plaintiff asserts that prior to the litigation, the DOE contracting officer rendered a decision finding that plaintiff owed DOE $5.8 million. Moreover, plaintiff asserts that at this point it would not have been reimbursed for any of the costs that it incurred from 1987 through 1991. Plaintiff characterizes the court's bench ruling as rendering a judgment in favor of plaintiff in the amount of $1.6 million. Thus, plaintiff is of the opinion that its success in the underlying litigation avoided a $5.8 million payment to DOE and resulted in a judgment in its favor of $1.6 million.

Although it is true that a party that prevails on "any significant issue in litigation which achieves some of the benefits the party sought in bringing the suit," *Hensley,* 461 U.S. at 433, 103 S.Ct. at 1939, is deemed a prevailing party, that applicant is not necessarily entitled to all of its attorneys' fees. Concomitantly, it is true that an EAJA

applicant will not be deprived of a certain amount of its reasonable attorneys' fees if it fails to prevail on every issue considered by the court. *See id.* at 439–40, 103 S.Ct. at 1942–43. In the case at bar, even a cursory review of the record indicates that plaintiff did not achieve the "excellent" results necessary to support an award of all of its reasonable attorneys' fees.

As an initial matter, plaintiff has mischaracterized the final results of this case. Plaintiff is not the recipient of a $1.6 million judgment, because the parties previously had entered into a partial settlement agreement on November 10, 1993, whereby plaintiff would recover only that portion of a judgment in excess of $2 million. Although plaintiff prevailed on a minority of the issues actually litigated, this is not dispositive, but it does serve as indicia of the fact that plaintiff did not achieve "excellent" results. On this basis, the court does not find that plaintiff is entitled to all of its reasonable attorneys' fees.

Despite its lack of entitlement to all of its attorneys' fees, plaintiff is not barred from an EAJA award. The Federal Circuit has adopted a mechanism through which a trial court may award attorneys' fees on a *pro rata* basis. *See Community Heating & Plumbing Co.,* 2 F.3d at 1146; *Naekel,* 884 F.2d at 1379. "Under the theory of apportionment, a contractor who receives only a partial judgment is a 'prevailing party' under the EAJA...." *Community Heating & Plumbing Co.,* 2 F.3d at 1146.

The difficulty in determining the proper *pro rata* award to which plaintiff is entitled devolves from the thoroughness, or lack thereof, of plaintiff's billing records. Plaintiff asserts that its records are adequate to support an EAJA award because they set forth in sufficient detail when "work was performed, the attorney who performed the work, and the nature of the work performed." *PCI/RCI v. United States,* 37 Fed. Cl. 785, 792 (1997); *see also Beta Systems, Inc. v. United States,* 866 F.2d 1404, 1406 (Fed.Cir.1989) (noting that plaintiff need only

provide typical billing records). The court agrees. Moreover, plaintiff's records are sufficient to the extent that, if the court were awarding 100% of plaintiff's claimed attorneys' fees and expenses, it would have no difficulty relying on the records submitted. Thus, the shortcomings in plaintiff's records are not such that the court would consider exercising its discretion to deny entirely an EAJA award. *See e.g., Naporano Iron & Metal Co. v. United States,* 825 F.2d 403, 405 (Fed.Cir.1987) (court has no duty to reconstruct plaintiff's inadequate bills).

Defendant apparently concedes that plaintiff's billing records are sufficient to support an EAJA award, as it offers no serious charge that the application should be denied on the basis of record deficiencies.[6] Nevertheless, the fact remains that the court cannot cull out the precise amount of time spent by plaintiff on the Chemform and LOC/LOF issues. The Supreme Court has cautioned that an "applicant should exercise 'billing judgment' with respect to hours worked ... and should maintain billing time records in a manner that will enable a reviewing court to identify distinct claims." *Hensley* 461 U.S. at 437, 103 S.Ct. at 1941. The Court refined this instruction by stating that an attorney is "not required to record in great detail how each minute of his time was expended. But at least counsel should identify the general subject matter of his time expenditures." *Id.* at 437 n. 12, 103 S.Ct. at 1941 n. 12. The rationale for this qualification is evident. As a practical matter, certain tasks performed by attorneys are not amenable to issue-based recordkeeping. For example, for an attorney to attempt to break down the time spent drafting a complaint on an issue-by-issue basis would not be productive. The court will not deny a meritorious EAJA application because plaintiff's attorneys have failed to identify the exact issue and activity with respect to that issue on which they were engaged for every minute billed.

In an effort to propose a reasonable alternative, defendant has suggested a transparently self-serving methodology requiring the

**6.** Defendant merely notes in a footnote that it is within the court's discretion to reduce or deny an EAJA award for insufficient or inadequate billing records. Moreover, defendant proposes a mechanism to avoid the problem posed by the records.

court to count the number of pages of trial transcript devoted to the issues upon which plaintiff prevailed. Applying this formula, defendant proposes that plaintiff is entitled to 30% of its claimed attorneys' fees and expenses.[7] This method is unacceptable for several reasons. Most significantly, the Federal Circuit rejected defendant's approach in *Naekel.* In that case defendant argued for an award based on a count of pages in an appellate brief: "We do not adopt the government's count of pages argument as demonstrating the 'significance' of certain issues; on that basis the issues on which ... [plaintiff's] position was strongest and the government's weakest ... could receive disproportionately low recompense, and otherwise distort the effort actually expended." 884 F.2d at 1379–80. Defendant's approach also would substantially underestimate the importance of the Chemform issue. Although defendant represents that only 18 out of 1,012 pages of testimony were devoted to Chemform, plaintiff has established that much of its time in the months leading up to trial were committed to preparing its defense on this issue.

Plaintiff has proposed two possible methodologies, neither of which is acceptable. First, plaintiff argues that it is entitled to 80% of its fees and expenses because it prevailed on 80% of its claims. The justification for this approach is that, of the $9 million at stake in this litigation, plaintiff succeeded with respect to $7.4 million.[8] This method is faulty for failing to take into account the $2 million partial settlement. Moreover, an analysis of the entire litigation demonstrates that plaintiff did not prevail to the extent necessary to support of an EAJA award of 80% of its fees and expenses.

Plaintiff next argues that the court should review the number of significant issues on which each party prevailed and make its award accordingly. As plaintiff prevailed on the Chemform and LOC/LOF issues and defendant prevailed on G & A and indirect costs, plaintiff asserts that, having prevailed on one half of the issues, it is entitled to 50% of its fees and expenses.[9]

Although plaintiff's explanation of this method appears reasonable, the court must reject it as contrary to the guidance provided by the Supreme Court in *Hensley* and the Federal Circuit in *Community Heating & Plumbing.* The *Hensley* court cited with approval the district court's rejection of a strictly mathematical approach to a fee award based on the number of issues on which plaintiff prevailed. *See* 461 U.S. at 435–36 n. 11, 103 S.Ct. at 1941 n. 11. "Such a ratio provides little aid in determining what is a reasonable fee in light of all the relevant factors." *Id.* at 436 n. 11, 103 S.Ct. at 1940 n. 11. The Federal Circuit raised similar concerns when it stated that a mathematical calculation might under compensate a deserving plaintiff. *See Community Heating & Plumbing,* 2 F.3d at 1146. Of course, the converse might also be true in that an applicant might be overcompensated by a mathematical division based on issues prevailed upon. Plaintiff's method fails as being strictly mathematical in nature and failing to consider the degree of success achieved.

In making an award of attorneys' fees, the trial court has significant discretion because of its " 'superior understanding of the litigation and the desirability of avoiding frequent appellate review of what essentially are factual matters.' " *Jean* 496 U.S. at 161, 110 S.Ct. at 2320 (quoting *Hensley,* 461 U.S. at 437, 103 S.Ct. at 1941) (noting that EAJA has similar flexibility to the Civil Rights Attorneys' Fees Awards Act of 1976, 42 U.S.C. § 1988 (1994)). Moreover, when calculating an award based on only limited success, "[t]here is no precise rule or formula for making ... [such a] determination[ ]. The

---

7. Defendant also argues that plaintiff is not entitled to recover any fees or expenses for the period prior to November 22, 1996, because until that date the vast portion of the parties' time was spent negotiating a settlement. Consequently, defendant only concedes 30% of the claimed fees and expenses after November 22, 1996.

8. Plaintiff derives this result on the basis that it was not required to pay DOE $5.8 million and received a judgment in the amount $1.6 million.

9. Plaintiff disposes of the severance and advertising issues by arguing that each party won a portion of the severance issue and that, as the advertising issue involved only $9,924.00, it may be ignored.

... court may attempt to identify specific hours that should be eliminated, or it may simply reduce the award to account for the limited success." *Hensley*, 461 U.S. at 436–37, 103 S.Ct. at 1941.

■ In the case at bar, plaintiff prevailed on two issues of import, Chemform and LOC/LOF. By virtue of its intimate knowledge of the proceedings—having reviewed the parties' pleadings, read the joint status reports, participated in settlement efforts, and conducted pretrial proceedings and trial—the court recognizes that Chemform and LOC/LOF comprised more than one half of the parties' efforts. On this basis, the court would consider 50% of the claimed attorneys' fees and expenses to be reasonable in light of the degree of success achieved. However, the trial court has significant discretion to reduce a fee award when an applicant's records are insufficient. In a case cited with approval by the Supreme Court, the Court of Appeals for the First Circuit stated:

> [W]e would not view with sympathy any claim that a district court abused its discretion in awarding unreasonably low attorney's fees in a suit in which plaintiffs were only partially successful if counsel's records do not provide a proper basis for determining how much time was spent on particular claims.

*Nadeau v. Helgemoe*, 581 F.2d 275, 279 (1st Cir.1978). Because plaintiff's records do not permit the court to determine precisely how much time was spent on the LOC/LOF and Chemform issues, the fee award is reduced to 40%.[10]

■ As one component of its application, plaintiff seeks attorneys' fees incurred preparing its EAJA application. It well-settled that a litigant may recover such fees. *See Schuenemeyer v. United States*, 776 F.2d 329, 333 (Fed.Cir.1985). In its entirety

plaintiff has prepared an impressive EAJA application. Nonetheless, defendant takes issue with the number of hours spent in researching the contingency fee issue of the application. The court agrees with defendant that 60 hours for this aspect of an EAJA application is unreasonable. The court will deduct 40 hours prior to calculating the EAJA award. The remaining hours billed to the EAJA application are reasonable and will be reimbursed at the same 40% level applied previously.

2) *The hourly rate*

Having established that plaintiff is entitled to 40% of its attorneys' fees, the next step is to determine the appropriate hourly rate. The EAJA provides:

> [A]ttorney fees shall not be awarded in excess of $75.00 per hour unless the court determines that an increase in the cost of living or a special factor, such as the limited availability of qualified attorneys for the proceedings involved, justifies a higher fee.

28 U.S.C. § 2412(d)(2)(A)(ii).[11] Whether to apply a cost-of-living adjustment ("COLA") is within the court's discretion. *See Oliveira v. United States*, 827 F.2d 735, 742 (Fed.Cir. 1987); *Kunz v. United States*, 16 Cl.Ct. 431, 438 (1989), *aff'd*, 899 F.2d 1227 (Fed.Cir. 1990).

Plaintiff seeks attorneys' fees in an amount calculated at the lesser of $153.00 per hour[12] or the prevailing market rate. The basic premise of this contention is correct. *See Levernier Constr., Inc. v. United States*, 947 F.2d 497, 504 (Fed.Cir.1991) (noting that applicant may recover lesser of either prevailing market rate or statutory cap plus COLA). Defendant argues that plaintiff is not entitled to an award above the statutory threshold. The essence of this assertion is that the EAJA does not contemplate an

---

10. Although the court has ruled that defendant will not be penalized for entering into settlement negotiations, that ruling applies only to matters that were litigated legitimately. Defendant's position with respect to Chemform and LOC/LOF was without substantial justification. Thus, in awarding plaintiff 40% of its fees and expenses, the court has considered the time expended unnecessarily by plaintiff addressing aspects of the case that were lacking substantial justification.

11. Plaintiff has not alleged any special circumstances that would support a fee award in excess of the statutory cap.

12. Plaintiff argues that this is the correct hourly rate after application of the COLA.

award of attorneys' fees beyond those actually incurred by a victorious litigant. Therefore, defendant posits that the fee agreement entered into by plaintiff and its attorneys precludes, at least for the vast majority of hours billed, an award in excess of $75.00.

The fee agreement at issue is a hybrid between the typical fee-per-hour-worked arrangement and the common-place contingency contract. In pertinent part the agreement states:

1. Dykema Gossett[13] will charge KMS at one-half of the normal hourly rates of the lawyers performing services.... KMS will be responsible for all disbursements (including out-of-pocket costs and internal items such as photocopying, fax and telephone charges) in accordance with our normal policies.... Simply put, this part of the arrangement will be handled just like all other KMS assignments, except that the lawyer services will be billed at one-half rates, and subject to the limitation set forth in paragraph 3.

2. Dykema Gossett will also receive 15 % of any aggregate recovery from the [c]laims, including interest and legal fees, but only after satisfaction of the $2 million offset in favor of the DOE pursuant to the Partial Settlement dated November 10, 1993....

3. KMS' obligations to make current payments for services under paragraph 1 shall be limited as follows: if the total bill paid by KMS to Dykema Gossett pursuant to paragraph 1 (for services and disbursements in the aggregate) reaches $250,000 (prior to KMS' receiving a net recovery of at least $500.00), then KMS need only make cash payments to cover disbursements (which, in the case of third-party vendors, shall be made by KMS directly to the vendor). The hourly-based fees in excess of the $250,000 total for services and disbursements, which would otherwise be payable to Dykema Gossett under paragraph 1, shall be deferred until an aggregate recovery of at least $500,000 is received by KMS and then shall be paid promptly out of KMS' share thereof. The

limitation set forth in this paragraph 3 shall lapse upon KMS' receipt of an aggregate recovery of at least $500,000.

Pursuant to this agreement, plaintiff received a 50% discount on the hourly rates charged by its attorneys. The $500,000.00 aggregate recovery was never achieved, so defendant takes the position that plaintiff cannot recover an EAJA award beyond the hourly fees billed at a 50% discount as the effect of the discount was to cause the vast majority of hours to be billed at $75.00 or less.

■ Defendant's logic is persuasive. First, a COLA can only be applied to rates billed above the statutory threshold. *See Levernier*, 947 F.2d at 504. *Levernier* also serves to limit a plaintiff's recovery to the lesser of $75.00 per hour plus a COLA or the prevailing market rate. *Id.* at 504. In the case at bar, the vast majority of the hours billed to plaintiff were billed at or below $75.00 per hour. Thus, according to defendant, for almost all of the hours billed to this litigation, plaintiff is entitled to no more than $75.00 per hour.

■ Plaintiff responds by asserting that the fee agreement should not limit an EAJA award to the discounted rates that plaintiff actually paid. In plaintiff's view the appropriate baseline rate for the purposes of the EAJA application is the non-discounted rate normally charged by its attorneys. Plaintiff thus urges the court to consider the lesser of the plaintiff's attorneys' full billing rates or the statutory cap plus a COLA.

In resolving this dispute, the court is not aided by the statute itself, which does not define the word "incurred." Several cases have considered the effect of a contingency fee on a potential EAJA award. In *Phillips v. General Servs. Admin.*, 924 F.2d 1577 (Fed.Cir.1991), a litigant sought attorneys' fees beyond the flat fee already paid to its attorney. The fee agreement in that case provided that the litigant was to pay its attorney $2,500.00 plus a percentage of any statutorily awarded attorneys' fee. The Federal Circuit held that such a contingency fee

13. At the commencement of this litigation, plaintiff's lead counsel was a member of this firm.

was incurred by the litigant and was therefore recoverable under the EAJA.

*Phillips* is distinguishable from the case at bar. While both agreements contemplated expressly a potential statutory fee award, the agreement in *Phillips* did not have a threshold above which plaintiff was required to recover in order for the contingency to activate. Plaintiff simply had to prevail in the action and receive a fee award. The contingency aspect of the fee agreement entered into between plaintiff and its attorneys in this case would only take effect if plaintiff achieved a $500,000.00 aggregate recovery. Because plaintiff did not achieve this level of recovery, plaintiff was not obligated to pay its attorneys any fees beyond the initial capped amount.[14]

Moreover, plaintiff is bound by the terms of its own contract. Plaintiff negotiated with its attorneys to receive a special discounted billing rate. Plaintiff also negotiated a $250,000.00 cap on attorneys' fees that would only be waived if plaintiff achieved a $500,000.00 aggregate recovery. Because the contingency fee aspect of the fee agreement was never activated, plaintiff's claim to attorneys' fees is limited to reimbursing legal fees actually paid. To base an award on a rate above that incurred by plaintiff would be to create a windfall that would allow plaintiff a greater degree of reimbursement than its limited success in this matter deserves. Therefore, the EAJA award will be based on the discounted rates incurred by plaintiff. As these discounted rates are below the statutory cap plus COLA, regardless of which party's method of calculation the court were to adopt, they will be applied.

3) *Expenses*

■ Expenses may be awarded on a *pro rata* basis. *See Community Heating & Plumbing*, 2 F.3d at 1146. The court adopts the approach used in making its fee award and will grant plaintiff 40% of its claimed expenses, subject to the following disallowances.

Plaintiff, on June 9, 1997, filed with the Clerk of the Court a Bill of Costs seeking $6,645.72. Defendant filed no objection. On October 31, 1997, the Clerk of the Court in a cogent order granted the request to the extent of $6,548.12. Because the items submitted in the Bill of Costs were also sought as expenses pursuant to the EAJA, the court will deduct $6,548.12 from plaintiff's claimed expenses. The court also agrees with the Clerk that plaintiff is not entitled to expenses incurred in obtaining transcripts of Margaret Worthington's and Chris Mattingly's depositions on computer disk and in condensed version.

■ In this proceeding defendant has challenged several of the other expenses claimed by plaintiff. First, defendant objects to expenses incurred by plaintiff in support of the testimony of Rocko Mazzaro and Robert F. McCarthy. Section 2412(d)(2)(A), which defines fees and expenses, refers only to expert witnesses, and Messrs. Mazzaro and McCarthy testified as fact witnesses. Expenses associated with each of these individuals will be excluded. Moreover, plaintiff also claims expenses incurred by Patrick B. Long, plaintiff's President. Mr. Long was also a fact witness whose expenses are not recoverable under the EAJA. The court disallows a total of $15,597.76 for expenses associated with these fact witnesses. Included in this disallowance is $350.50 in overnight delivery charges incurred directly by plaintiff. These expenses are impermissible because plaintiff failed to indicate that they were incurred for purposes unrelated to the factual testimony of these witnesses.

■ Defendant also objects to plaintiff's expenses associated with, among others, delivery services, meals, and local travel. In *Oliveira*, 827 F.2d at 744, the Federal Circuit ruled that the examples articulated in section 2412(d)(2)(A) are merely illustrative, rather than exclusive. The court finds these expenses to have been reasonably incurred, and plaintiff is entitled to recover them subject to the following disallowances: The expenses documented as "supplies" or "miscellaneous"

---

**14.** A similar line of reasoning can be used to distinguish *Ed A. Wilson, Inc. v. General Servs.*

*Admin.*, 126 F.3d 1406 (Fed.Cir.1997).

606

are disallowed in the amount of $236.92; the court also finds that $5.00 claimed for an overnight delivery address correction is not a reasonable expense and may not be recovered under the EAJA.

Defendant argues that, because plaintiff did not document each of its claimed photocopying expenses, it should not recover any of them. The court deems the amount sought to be reasonably incurred, but disallows $277.50 to avoid double recovery for the photocopying costs awarded by the Clerk of the Court.

 Expenses for computerized research are often recoverable under the EAJA. *See PCI/RCI*, 37 Fed. Cl. at 791. "The quantum and method of proof of each allowable expense is discretionary with the trial court." *Oliveira*, 827 F.2d at 744. Applying this standard in *PCI/RCI*, this court required plaintiff to provide documentation indicating "in detail the nature of each of the claimed computerized research sessions." *PCI/RCI*, 37 Fed. Cl. at 791. In his second affidavit, one of plaintiff's attorneys purported to provide the court with details pertaining to computerized research costs. Affidavit of Martin R. Fisher, Oct. 16, 1997, ¶ 3. However, the affidavit does not include invoices. Plaintiff's expenses for computerized research are denied in their entirety in the amount of $957.97.

The final expenses challenged by defendant are those associated with plaintiff's retention of Rust Environment & Infrastructure, Inc. ("Rust"). Defendant cites *Scherr Constr. Co. v. United States*, 26 Cl.Ct. 248, 250 (1992), for the proposition that plaintiff must provide the court with justification for these expenses. Plaintiff has done so. In an affidavit, one of plaintiff's attorneys explains that plaintiff was required to retain Rust to assist in preparation of the Chemform issue for trial. *See* Affidavit of Martin R. Fisher, Aug. 11, 1997, ¶¶ 10–12. Because defendant's position with respect to Chemform was not substantially justified, plaintiff cannot be faulted for responding to defendant's baseless allegations. The expenses incurred by plaintiff for this purpose are allowable.

In summary, the court finds that plaintiff is entitled to the following attorneys' fees and expenses:

Attorneys' fees

| | | |
|---|---|---|
| TS | 239.6 hrs @ $137.50 = | $32,945.00 |
| | 190.3 hrs @ $120.00 = | $22,893.75 |
| MRF | 277.5 hrs @ $82.5 = | $24,281.25 |
| | 331.3 hrs @ $75.0 = | $24,847.50 |
| KSN | 8.6 hrs @ $90.00 = | $ 774.00 |
| MLD | 12.7 hrs @ $62.50 = | $ 793.75 |
| GBB | 40.1 hrs @ $32.50 = | $ 1,303.25 |
| SHJ | 1.3 hrs @ $32.50 = | $ 42.25 |
| PGJ | .5 hrs @ $32.50 = | $ 16.25 |
| JHG | 39.8 hrs @ $37.5 = | $ 1,492.50 |
| KRH | 206.2 hrs | |
| (−40 hrs. disallowed @ $37.50) = | | $ 6,232.50 |

| | | | |
|---|---|---|---|
| Total attorneys' fees | $114,176.75 | × 40% = | $45,670.70 |
| Total expenses | $ 29,280.36 | × 40% = | $11,712.14 |
| Total EAJA award | | | $57,382.84 |

## CONCLUSION

Accordingly, based on the foregoing, plaintiff's application for attorneys' fees and expenses is granted consistent with the foregoing. The Clerk of the Court shall enter an award for plaintiff in the amount of $57,382.84.

**IT IS SO ORDERED.**