**BALDI BROS. CONSTRUCTORS,**
Plaintiff,

v.

**The UNITED STATES, Defendant.**

No. 98–326C.

United States Court of Federal Claims.

March 29, 2002.

William J. Braun, La Jolla, CA, for plaintiff.

Michael F. Kiely, Washington, DC, with whom was Assistant Attorney General Robert D. McCullum, Jr., for defendant.

## OPINION

MILLER, Judge.

Before the court is plaintiff's application for attorneys' fees and expenses pursuant to the Equal Access to Justice Act (the

"EAJA"), 28 U.S.C. § 2412 (1994 & Supp. V 1999). Among the issues to be decided are whether and to what extent plaintiff's failure to succeed on certain damage claims affects it recovery. Argument is deemed unnecessary.

## FACTS

Baldi Bros. Constructors ("plaintiff") successfully bid on Contract No. N62470–95–C–5035, offered by the United States Department of the Navy (the "Navy") for the construction of a training range in North Carolina. *Baldi Bros. Constructors v. United States*, 50 Fed.Cl. 74, 75 (2001). During the course of construction, plaintiff encountered unexpected subsurface conditions because the contract had failed to identify the project site as federally protected wetlands. *Id.* at 77. The contract was modified to reflect the true site condition, but plaintiff and the Navy were unable to reach an agreement as to plaintiff's additional compensation. *Id.* at 78. Plaintiff then brought a claim for differing site conditions under 48 C.F.R. (FAR) § 52.236–2 (1984), as incorporated into the contract. *Id.* at 79. At the onset of trial, on April 30, 2001, the Government stipulated on the record that it would not dispute liability. *Id.* at 78–79.

The trial proceeded as to the issue of damages, and the court awarded plaintiff $778,139.00 in damages due to the differing site conditions, $14,106.00 due to the delay in contract performance, and $46,406.40 due to certain equipment standby costs. *Id.* at 85. Although plaintiff had sought $1,528,537.00, the court reduced the amount on the grounds that some of plaintiff's damages were due to plaintiff's own errors in bid preparation or were unrecoverable because the delays transpired on days for which plaintiff was contractually required to be available (and thus incur costs). *Id.* at 83–84.

Plaintiff now seeks attorneys' fees and other expenses in the amount of $181,230.34, representing attorney and expert/consulting fees incurred in the instant litigation and costs and expenses incurred in the prosecution of its claim submitted to the Navy.

## DISCUSSION

■ The EAJA provides that a judgment for costs "may be awarded to the prevailing party in any civil action brought by or against the United States." 28 U.S.C. § 2412(a)(1) (1994 & Supp. V 1999). Section 2412(d)(1)(B) of the EAJA provides:

> A party seeking an award of fees and other expenses shall, within thirty days of final judgment in the action, submit to the court an application for fees and other expenses which shows that the party is a prevailing party and is eligible to receive an award under this subsection, and the amount sought, including an itemized statement from any attorney or expert witness representing or appearing in behalf of the party stating the actual time expended and the rate at which fees and other expenses were computed. The party shall also allege that the position of the United States was not substantially justified.

Thus, the EAJA requires that (1) the claimant be a "prevailing party"; (2) the Government's position was not "substantially justified"; (3) no special circumstances make the award unjust; and (4) the fee application be submitted within 30 days of final judgment and supported by an itemized statement. *Comm'r v. Jean*, 496 U.S. 154, 158, 110 S.Ct. 2316, 110 L.Ed.2d 134 (1990). The purpose of the EAJA is to eliminate legal expenses as a barrier to challenges of unreasonable government action. *Cmty. Heating & Plumbing Co. v. Garrett*, 2 F.3d 1143, 1145 (Fed.Cir. 1993); *Gavette v. OPM*, 808 F.2d 1456, 1459–60 (Fed.Cir.1986) (en banc) (EAJA enacted to reduce disparity between liability for fees and expenses of private parties and that of Government). All the same, the EAJA is not a mandatory fee shifting device, *Gavette*, 808 F.2d at 1465, and, because the EAJA is a specific waiver of sovereign immunity, it is to be construed narrowly. *Chiu v. United States*, 948 F.2d 711, 714 (Fed.Cir.1991).

### 1. *Entitlement*

■ The parties do not dispute that plaintiff was the prevailing party in this action, nor that plaintiff is otherwise EAJA-eligible. Defendant bears the burden of proving that fees are nevertheless unwarranted because the Government's position was "substantially

justified." *Helfer v. West,* 174 F.3d 1332, 1336 (Fed.Cir.1999). The EAJA does not define the term "substantially justified." As explained by the Supreme Court, "substantially justified" does not mean that the Government is required to be "justified to a high degree." *Pierce v. Underwood,* 487 U.S. 552, 565, 108 S.Ct. 2541, 101 L.Ed.2d 490 (1988). Rather, the standard is analogous to the one requiring a "reasonable basis in law and fact," which means that the Government must be "justified to a degree that could satisfy a reasonable person." *Id.; accord Chiu,* 948 F.2d at 715. Whether the Government's position lacks substantial justification is a "single finding" that "operates as a one-time threshold for fee eligibility." *Jean,* 496 U.S. at 160, 110 S.Ct. 2316; *see also Doty v. United States,* 71 F.3d 384, 386 (Fed.Cir. 1995) ("position" encompasses both prelitigation and litigation positions). Such a determination is to be decided on a case-by-case basis. *Clemmons v. West,* 206 F.3d 1401, 1404 (Fed.Cir.2000); *Stillwell v. Brown,* 46 F.3d 1111, 1113 (Fed.Cir.1995).

Plaintiff predicates its EAJA application on the fact that the Government settled all issues regarding liability for the differing site condition on the first day of trial. According to plaintiff, it "attempted to obtain a stipulation from Defendant, and Defendant made numerous suggestions that it would stipulate prior to trial, but always withdrew the offer before it could be finalized or agreed upon." Pl.'s Br. filed Oct. 26, 2001, at 5. Plaintiff charges that, from April of 1998 through May of 2001, the Department of Justice assigned four different attorneys to defend plaintiff's case, and plaintiff represents that during this time period it "had general conversations in which the Defendant indicated that it *might* not be disputing entitlement, but only quantum." *Id.* Then, on the morning of trial on April 30, 2001, defense counsel, in a *volte face,* stipulated on the record that defendant would not dispute plaintiff's entitlement. Defendant does not argue with this characterization of events. Plaintiff also offers various arguments to the effect that the Navy acted without substantial justification during prelitigation negotiations and with regard to plaintiff's claim under the Contract Disputes Act of 1978, 41 U.S.C. §§ 601–613

(1994 & Supp. V 1999) (the "CDA"). The thrust of plaintiff's application, however, is that no genuine dispute existed about the differing site condition, but defendant nevertheless forced plaintiff to prepare to litigate this non-issue.

■ It is appropriate to examine the parties' prelitigation and settlement positions to determine whether the Government's overall position was substantially justified. *Bailey v. United States,* 721 F.2d 357, 361 (Fed.Cir.1983) (remanding because trial court did not consider whether delay in reaching settlement evidenced lack of substantial justification). However, the Government's willingness to settle or concede issues does not establish that its litigation position lacked substantial justification. *Pierce,* 487 U.S. at 568, 108 S.Ct. 2541; *KMS Fusion, Inc. v. United States,* 39 Fed.Cl. 593, 598–99 (1997). The reasons for the concession also must be evaluated in assessing the strengths or weaknesses of the Government's position. *Pierce,* 487 U.S. at 568, 108 S.Ct. 2541.

■ Paradoxically, defendant is silent on this aspect of the litigation. It does not justify its refusal to stipulate liability or its subsequent eleventh-hour decision not to contest liability. Instead, it asserts that because plaintiff ultimately recovered only 55% of the amount of damages sought, the substantial justification of the Government's litigation position is self-evident. Defendant relies on *Griffin & Dickson v. United States,* 21 Cl.Ct. 1, 6–7 (1990), where the United States Claims Court noted that "the Federal Circuit generally has awarded attorney fees under the EAJA only where the Government offered no plausible defense, explanation, or substantiation for its action."

As an initial matter, defendant misses the point that the court is "required to rule on the EAJA application 'independent from the merits phase.'" *KMS Fusion,* 39 Fed.Cl. at 598 (citing *Fed. Election Comm'n v. Rose,* 806 F.2d 1081, 1090 (D.C.Cir.1986)); *cf. Doty,* 71 F.3d at 386 (rejecting Government's attempt to link EAJA fees to merits of appeal). The fact that plaintiff recovered only 55% of its monetary claim is not of itself sufficient to discharge defendant's burden of

proving substantial justification of its position before the actual litigation, especially given that plaintiff's diminished recovery represents failure to prove specific damages, rather than exoneration of the Government. Nevertheless, in appropriate circumstances, the court would not be disinclined to find that the Government's position during litigation outweighed its prelitigation conduct so as to support a finding that it acted with substantial justification. *See Manno v. United States,* 48 Fed.Cl. 587, 591 (2001) ("[E]ven assuming that a party's settlement position is unreasonable, it is still possible to find that the Government's position as a whole is substantially justified."); *Gargoyles, Inc. v. United States,* 45 Fed.Cl. 139, 147 (1999) ("Assuming, *arguendo,* that defendant's settlement position was unreasonable, the Court concludes that such unreasonableness was not sufficient to justify an award of fees and expenses.").

■ In a remarkable absence of litigative riposte, defendant has made no attempt to provide a "defense, explanation, or substantiation" for its action, either before or during the litigation phase. Defendant remains silent on the issue of its prelitigation conduct, and its argument that it defeated some of plaintiff's damages claims ignores the well-established convention that the fact that the Government successfully defeated certain claims does not alone establish that it so acted with substantial justification. The standard requires defendant to demonstrate that the Government acted reasonably during the entire dispute. *Jean,* 496 U.S. at 160, 110 S.Ct. 2316; *Pierce,* 487 U.S. at 565, 108 S.Ct. 2541. Defendant cannot prove that the Government's conduct was substantially justified when it does not address its conduct at all. *Griffin,* 21 Cl.Ct. at 6–7; *see also KMS Fusion,* 39 Fed.Cl. at 599 (Government acted reasonably when it abandoned certain claims based on fruits of discovery, but acted unreasonably when it abandoned another claim on

eve of trial, making "no effort to justify why its position changed so abruptly").

2. *Attorneys' fees*

1) *Pro rata reduction*

■ Defendant urges the court to reduce plaintiff's total recovery of attorneys' fees on a *pro rata* basis. Such a *pro rata* reduction is within the court's discretion. *Cmty. Heating,* 2 F.3d at 1146. Defendant asserts that because plaintiff only recovered 55% of its damages, the court should effect a *pro rata* reduction of the amount of attorneys' fees and costs to mirror plaintiff's rate of recovery on its claims. Plaintiff does not respond to this argument.[1] In any case, the argument is a candidate for rejection. Whether a plaintiff prevailed on a particular claim or argument is not dispositive of whether it was reasonable for plaintiff to incur costs related to that claim or argument. "Where a plaintiff has obtained excellent results ... the fee award should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit." *Hensley,* 461 U.S. at 435, 103 S.Ct. 1933; *see also Jean,* 496 U.S. at 163 n. 10, 110 S.Ct. 2316 (*Hensley* standard of reasonableness of fees applies to EAJA). Furthermore, defendant's proposed mathematical approach, which predicates a plaintiff's fee award on the number of issues on which plaintiff prevailed, already has been soundly rejected: The ratio of successful claims to total claims simply need not correlate to actual expenses incurred in relation to any particular claim. *Hensley,* 461 U.S. at 435–36 n. 11, 103 S.Ct. 1933; *Cmty. Heating,* 2 F.3d at 1146.

■ Where "a plaintiff has achieved only partial or limited success, the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount." *Hensley,* 461 U.S. at 437, 103 S.Ct. 1933; *cf. Naekel v. F.A.A.,* 884 F.2d 1378, 1379 (Fed.Cir.1989)

---

1. Plaintiff instead argues that no *pro rata* reduction is appropriate because defendant's position in the litigation was not substantially justified. This argument misses the point that the Government's substantial justification goes only to the threshold inquiry of whether plaintiff is entitled to EAJA recovery. The court nevertheless may

reduce recovery for attorneys' fees on a *pro rata* basis to effect recovery consistent with the Supreme Court's admonition that recovery of attorneys' fees be in some way related to a plaintiff's actual level of success. *See Hensley v. Eckerhart,* 461 U.S. 424, 441, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983).

(under theory of apportionment, contractor which receives only partial judgment is "prevailing party" under EAJA and may recover *pro rata* portion of fees and expenses). The court thus may "attempt to identify specific hours that should be eliminated, or it may simply reduce the award to account for the limited success." *Hensley,* 461 U.S. at 436–37, 103 S.Ct. 1933. "This discretion authorizes the trial court to consider a wide variety of factors, including the conduct of the parties during trial, in reaching its costs decision." *Neal & Co. v. United States,* 121 F.3d 683, 687 (Fed.Cir.1997).

Consistent with the Supreme Court's direction, the court addresses a party's degree of success by asking two questions: "First, did the [party] fail to prevail on claims that were unrelated to the claims on which he succeeded? Second, did the [party] achieve a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award?" *Hensley,* 461 U.S. at 434, 103 S.Ct. 1933. Plaintiff prevailed 100% on the issue of liability, as conceded by defendant, and the court finds no reason to reduce its recovery with respect to the attorneys' fees and costs assignable to preparation for a trial on liability. Plaintiff was not successful to the same degree during the trial on damages; indeed, plaintiff cannot be said to have achieved "excellent results," as it recovered one half of the damages sought to be proved. The court found that many of plaintiff's claimed costs for delays already were subsumed in its claim for differing site condition and/or otherwise unsubstantiated.

The court cannot sever plaintiff's trial on damages from the issue of liability. Although plaintiff sought recovery for three different types of damages, all of plaintiff's contract work was based on a single contract and for work done at a single site and "the fact that different tasks were necessary to complete the job, however, does not make each task a separate and distinct claim for litigation purposes." *Design & Prod., Inc. v. United States,* 20 Cl.Ct. 207, 215 (1990); *see also Hensley,* 461 U.S. at 435, 103 S.Ct. 1933;

*Sorenson v. Mink,* 239 F.3d 1140, 1147 (9th Cir.2001) ("Claims are 'unrelated' if they are 'entirely distinct and separate' from the claims on which the plaintiff prevailed.").

Nonetheless, awarding plaintiff total recovery for attorneys' fees and expenses in this case would have the result of awarding it recovery out of proportion to its actual success. In such a situation, *Hensley* instructs that it remains appropriate to "compute the appropriate fee as a function of degree of success," so as to make the hours expended for purposes of the fee award commensurate with that success. *F.J. Vollmer Co. v. Magaw,* 102 F.3d 591 599 (D.C.Cir.1996) (attorneys' fees reduced by amount of time spent on failed appeal); *e.g., Cmty. Heating,* 2 F.3d at 1146 (attorneys' fees limited to 30% of time spent successfully litigating accord and satisfaction issue); *KMS Fusion,* 39 Fed. Cl. at 602–03 (attorneys' fees limited to 50% representing efforts spent on two issues on which plaintiff actually prevailed); *Willoughby v. Chater,* 930 F.Supp. 1466, 1469 (D.Utah 1996) (attorneys' fees reduced by 50% because plaintiff prevailed on only one of two issues and further reduced by time spent on unnecessary motion irrelevant to success on merits); *Smith v. Brown,* 8 Vet.App. 327, 329–30 (1995) (discretionary 5% reduction appropriate to reflect plaintiff's failure to succeed on one claim).

Although plaintiff's invoices are not consistently clear,[2] they suggest that plaintiff's attorney devoted about a third of his trial preparation and trial time to the issue of delay costs. It is impossible to account for plaintiff's failure to recognize damages caused by its own bid errors as a function of attorney hours. Because plaintiff's records do not permit the court to determine with a reasonable degree of confidence how much time was spent on these issues, the court finds that a *pro rata* reduction in plaintiff's total recovery of 33.3% is warranted. *Cf. Naporano Iron & Metal Co. v. United States,* 825 F.2d 403, 405 (Fed.Cir.1987) ("We reject unequivocally any suggestion that the Claims Court had an obligation to reconstruct the

2. Specifically, while plaintiff's prelitigation "description of legal services" is quite specific (for example, "Meet with Craig Sorenson [sic] re

delay analysis"), plaintiff's trial work is summarized more generally (for example, "Participate in hearing and meet with Baldi and Sorensen").

bills for [plaintiff].”); *KMS Fusion*, 39 Fed. Cl. at 603 (“[W]e would not view with sympathy any claim that a district court abused its discretion ... [where] plaintiff’s were only partially successful if counsel’s records do not provide a proper basis for determining how much time was spent on particular claims.”) (quoting *Nadeau v. Helgemoe*, 581 F.2d 275, 279 (1st Cir.1978)).

### 2) *Substantiation*

Section 2412(b) of the EAJA requires the court to award reasonable fees and expenses of attorneys. Reasonable attorneys’ fees, as defined by section 2412(d)(2)(A), “shall not be awarded in excess of $125 per hour” without some justification for a higher fee. Plaintiff seeks to recover attorneys’ fees incurred from March 3, 1998, through October 26, 2001, the date of its EAJA claim, in the amount of $68,887.50. The EAJA, per section 2412(d)(1)(B), requires that anyone seeking an award of attorneys’ fees and expenses submit “an itemized statement ... stating the actual time expended and the rate at which fees and other expenses were computed.” “[C]ontemporaneous records of attorney’s time and usual billing rates, as well as a breakdown of expenses, are necessary in order to determine the reasonableness of the charges.” *Naporano*, 825 F.2d at 404. These contemporaneous records, moreover, must contain details of those expenses, identifying the specific task performed. *Id.* The court has the discretion to adjust the amount claimed if “the fee charged is out of line with the nature of the services rendered,” *Pierce*, 487 U.S. at 581, 108 S.Ct. 2541 (Brennan, J., concurring), or the hours claimed “are excessive, redundant, or otherwise unnecessary.” *Hensley*, 461 U.S. at 434, 103 S.Ct. 1933.

Plaintiff submits a summary of attorneys’ fees, accompanied by contemporaneous in-voices showing that plaintiff’s counsel spent 551.1 hours prosecuting this action. Although plaintiff paid its counsel a higher rate, it commendably seeks recovery only at the statutory $125.00 per hour.

These hours must be reduced by 36.2 hours. According to the supporting affidavit, 7.2 hours are found on an invoice from Braun & Mann dated April 15, 1998.[3] Plaintiff has not produced this invoice. In addition, plaintiff cannot substantiate its claim for 29 hours billed on June 15, 1998, because the accompanying invoice lacks any description of work performed or a total of hours worked.[4] Together, these invoices represent 36.2 hours in unsubstantiated legal fees precluded under the *Naporano* standard. Deduction of these 36.2 hours reduces plaintiff’s claim for attorneys’ fees to 514.9 hours.

■ Of the total attorneys’ fees claimed, $6,000.00 represents fees incurred in the preparation of plaintiff’s EAJA application. Costs incurred in the preparation and filing of an EAJA claim are recoverable under the EAJA. *Jean*, 496 U.S. at 157, 110 S.Ct. 2316; *Schuenemeyer v. United States*, 776 F.2d 329, 333 (Fed.Cir.1985). In its application plaintiff claimed 30 hours of anticipated attorney time for post-application matters, which defendant challenged as not actually incurred as required by the EAJA. *See* 28 U.S.C. §§ 2412(a), (d)(1)(a); *Wall Indus. Inc. v. United States*, 15 Cl.Ct. 796, 800 (1988), *aff’d*, 883 F.2d 1027 (Fed.Cir.1989). In its reply plaintiff amends this aspect of its claim, seeking recovery of 39 hours of attorneys’ fees, documented by invoices dated October 31, 2001; December 1, 2001; and January 31, 2002.[5] Plaintiffs’ reply, however, only provides invoices substantiating 26 hours spent on EAJA matters.[6] Plaintiff’s total claim thus is reduced to 510.9 hours.

---

3. In its response defendant erroneously refers to this invoice as dated April 15, 1999.

4. In the description column, the invoice states only “INV # 1229” and the amount of $5,251.00. The previous invoice also dated June 15, 1998, is # 1227. In its response defendant erroneously refers to this invoice as dated June 15, 1999.

5. Plaintiff’s attorney attests that in addition to the 39 hours billed to plaintiff, he worked six hours that have not yet been billed. Plaintiff’s brief, however, states only that plaintiff seeks recovery for the hours actually billed. As plaintiff makes no express argument as to the unbilled hours and provides no other records to substantiate that six hours of work, the court has not considered them.

6. The court reaches this figure by disregarding those invoices already submitted with plaintiff’s original application and not meant to be includ-

In its EAJA application, plaintiff sought $21,875.89 in expenses related to its preparation of a CDA claim against the Navy. In support plaintiff cited *Levernier Constr., Inc. v. United States,* 21 Cl.Ct. 683, 691 (1990). Defendant objected, citing the fact that this case was overturned on appeal, the Federal Circuit holding that a contractor's prosecution of an equitable adjustment claim before a contracting officer is not recoverable under the EAJA. *Levernier Constr., Inc. v. United States,* 947 F.2d 497, 502 (Fed.Cir.1991). In response plaintiff withdrew its claim for these costs.

The Government now argues that the court should further reduce plaintiff's recovery by four hours, representing attorneys' fees incurred on August 27, 2001, researching "case law on recovery of claim preparation costs." According to defendant, the court should not allow plaintiff to recover fees spent performing inadequate research. In support, it cites *PCI/RCI v. United States,* 37 Fed.Cl. 785, 791 (1997), in which this court disallowed 50% of claimed computer research expenses because plaintiff failed to cite key cases upon which the court ultimately relied. Defendant also cites *Cooper v. United States R.R. Ret. Bd.,* 24 F.3d 1414, 1418 (D.C.Cir.1994), in which the United States Court of Appeals for the District of Columbia Circuit disallowed 50% of attorneys' fees related to certain briefs, on grounds that the briefs were "not well-organized, and they devoted considerable space to arguments extraneous to the main issues." Although *PCI/RCI* and *Cooper* are distinguishable to the extent that they discussed substantial fees incurred in relation to the plaintiffs' claims on the merits, plaintiff easily could have discovered that *Levernier* had been overturned. The four hours thus are deducted from plaintiff's total recovery.

Plaintiff has submitted documentation showing that it incurred legal fees for 506.9 hours of work. At $125.00 an hour, plaintiff has substantiated an EAJA claim for $63,362.50. Defendant does not challenge this amount as excessive, redundant, or oth-

erwise unnecessary. Applying the 33.3% *pro rata* reduction, to account for plaintiff's limited success in proving damages, plaintiff's recovery for attorneys' fees is: $42,199.43.

### 3. *Expert fees and expenses*

A plaintiff may recover "the reasonable expense of expert witnesses [and] the reasonable cost of any study, analysis, engineering report, test, or project which is found by the court to be necessary for the preparation of the party's case." 28 U.S.C. § 2412(d)(2)(A). As with attorneys' fees, expert fees and expenses must be both reasonable and adequately supported by documentation. *Naporano,* 825 F.2d at 404. Unlike attorneys' fees which "must" be awarded to EAJA eligible plaintiffs, the decision to award expert fees and costs is entirely within the court's discretion. *Neal & Co.,* 121 F.3d at 686–87.

Seeking to exclude plaintiff's claim for $61,741.47, which represents fees and expenses of its expert, Craig Sorensen, defendant argues that these fees are *"per se* unreasonable because the entire argument that was advanced by Mr. Sorensen was soundly rejected by the Court in its decision." Def.'s Br. filed Feb. 7, 2002, at 9. However, as discussed above, the Supreme Court has rejected any kind of *per se* rule of reasonableness. The court again undertakes the *Hensley* analysis and examines whether the plaintiff failed to prevail on claims that were unrelated to the claims on which he succeeded and whether plaintiff achieved a level of success that makes the hours reasonably expended a satisfactory basis for making the fee award. 461 U.S. at 434, 103 S.Ct. 1933.

Mr. Sorensen offered expert testimony that plaintiff could recover delay damages for certain days within the performance period of the contract. This opinion was predicated upon plaintiff's intention to finish the project several months early.[7] The court disagreed, holding that plaintiff contractually was liable for the extended delays on the ground that

---

ed in plaintiff's original claim for anticipated hours.

7. The court does not reach the parties' dispute as to whether Mr. Sorensen's testimony also supported the existence of the differing site condition, delay, or disruption.

"[r]egardless of plaintiff's confidence that it would have completed its work well ahead of the contract completion date, the Government should not be liable when plaintiff's predictions are untested." *Baldi Bros.*, 50 Fed.Cl. at 84.

■ Mr. Sorensen's testimony was "reasonably necessary" to the pursuit of plaintiff's claim for certain days of delay. *Cf. Manildra Milling Corp. v. Ogilvie Mills, Inc.*, 76 F.3d 1178, 1184 (Fed.Cir.1996) (use of deposition at trial is "direct evidence" that deposition reasonably necessary for pursuit of claim); *Sterling Fed. Sys., Inc. v. Goldin*, 16 F.3d 1177, 1188 (Fed.Cir.1994) (fact that expert did not actually testify at trial does not preclude finding he was reasonably necessary for plaintiff's claim). Furthermore, the fact that plaintiff lost this aspect of its claim does not make the attempt *per se* unreasonable. Defendant does not endeavor to tailor its observation into an argument that awarding plaintiff Mr. Sorensen's fees would distort plaintiff's overall recovery, and the court refuses to perform such an exercise in a vacuum. *See Hensley*, 461 U.S. at 436, 103 S.Ct. 1933. Even so, the reasoning behind the court's *pro rata* reduction of attorneys' fees applies equally, if not more so, to plaintiff's costs relating to Mr. Sorensen. The court again concludes that a *pro rata* reduction in total compensation by 33.3% fulfills *Hensley's* requirement that attorneys' and experts' fees be awarded with reference to plaintiff's actual success. Plaintiff's recovery for Mr. Sorensen's expert fees and costs thus is limited to $41,119.82.

### 4. *Other costs/expenses*

■ Plaintiff submits a claim for $28,725.48 in "other costs/expenses," broken down in pretrial and trial costs and expenses. This figure represents costs and expenses incurred by plaintiff's attorney of record, as well as costs and expenses incurred by plaintiff's project manager, Debbie Saunders. According to her affidavit, Ms. Saunders accompanied plaintiff's attorney to various depositions. She also attests to travel expenses paid by plaintiff for its six trial witnesses and miscellaneous charges for the delivery of materials necessary for trial.

The EAJA, however, distinguishes between costs and expenses incurred by attorneys and those incurred by others related to the litigation. *See* 28 U.S.C. § 2412(a)(1) ("Except as otherwise specifically provided by statute, a judgment for costs ... but not including the fees and expenses of attorneys, may be awarded to the prevailing party ...."); 28 U.S.C. § 2412(b) ("[A] court may award reasonable fees and expenses of attorneys, in addition to the costs which may be awarded pursuant to subsection (a) ...The United States shall be liable for such fees and expenses to the same extent that any other party would be liable under the common law ....").

The distinction is important for several reasons. First, while a plaintiff is entitled to legal fees and associated expenses by virtue of its entitlement to EAJA expenses, no such entitlement exists as to costs; the award of costs is entirely within the court's discretion. *Neal & Co.*, 121 F.3d at 686–87. Secondly, 28 U.S.C. § 2412(d)(2)(A) limits eligible fees and expenses of non-attorneys to "the reasonable expenses of expert witnesses, the reasonable cost of any study, analysis, engineering report, test, or project which is found by the court to be necessary for the preparation of the party's case." Although the list of recoverable expenses set forth in this subsection is not exclusive, the expenses must be expenses of attorneys or experts, as opposed to expenses of the plaintiff generally. *Ed A. Wilson, Inc. v. GSA*, 126 F.3d 1406, 1408 n. 2 (Fed.Cir.1997); *Oliveira v. United States*, 827 F.2d 735, 744 (Fed.Cir. 1987). Consequently, while non-local travel and other expenses incurred by attorneys are compensable under the EAJA, a contractor may not recover travel expenses for itself.

■ The expenses incurred by Ms. Saunders are not recoverable. She is an employee of plaintiff, and, although she may have provided great assistance to plaintiff's attorney, she herself is not an attorney, a specialized non-attorney practitioner, or outside specialist retained to assist with the litigation. The EAJA precludes recovery for her expenses. *See Fanning, Phillips & Molnar v. West*, 160 F.3d 717, 721–22 (Fed.Cir.1998) (rejecting argument that expenses of part-

nership employee who assisted attorney in litigation recoverable on ground that employee acted as "agent" of attorney for purposes of EAJA recovery). The expenses of plaintiff's witnesses, other than its expert witness Mr. Sorensen, are also not recoverable. Section 2412(d)(2)(A), which defines fees and expenses, refers only to expert witnesses, so plaintiff cannot recover expenses attributable to its fact witnesses or other employees, even if they were reasonably necessary for plaintiff's case. *KMS Fusion*, 39 Fed.Cl. at 605; *Design & Prod.*, 20 Cl.Ct. at 222. Plaintiff's recovery for costs and expenses thus is limited to those incurred by its attorney and by its expert, Mr. Sorensen.[8] As discussed below, the court has removed these charges from plaintiff's total recovery.[9]

### 1) Travel—pretrial

While plaintiff claims $6,224.99 as travel expenses incurred prior to trial, it does not itemize all of these charges or place them on a list or table. Defendant has sifted through plaintiff's invoices and represents that it has reconciled plaintiff's claim for $6,224.99, presenting its own itemized statement of claimed costs. This itemization reveals that plaintiff neglected to include $1,150.00 in airfare incurred by plaintiff's attorney and Ms. Saunders, which is found in the Saunders Affidavit and accompanying Exhibit D. Because this airfare is supported by contemporaneous records and the omission easily was discerned by the court, the court will consider it as part of plaintiff's EAJA application, increasing plaintiff's claim for pretrial travel costs to $7,374.99.

Of this amount, the court must deduct the cost of airfare incurred by Ms. Saunders, comprising $311.00 found on plaintiff's attorney's May 28, 2000 invoice, $215.00 found on plaintiff's attorney's June 25, 2000 invoice, and $575.00 found in the Saunders Affidavit. An additional $1,281.00 found on plaintiff's attorney's August 16, 2000 invoice, identified as "Airfare on Southwest" must be discounted, because the invoice does not include an accompanying receipt so as to allow the court to determine who, if anyone, accompanied plaintiff's attorney. Similarly, in her affidavit, Ms. Saunders represents that she personally incurred $3,160.00 in hotel charges for herself and plaintiff's attorney while attending various depositions. Plaintiff has not attached contemporaneous invoices or even credit card statements, so this amount will also be discounted.

Plaintiff's total recovery for pretrial travel is $1,832.99, representing the substantiated expenses of plaintiff's attorney.

### 2) Travel—trial [10]

Plaintiff seeks $15,375.94 in travel expenses incurred for trial. The court discounts the airfare incurred by individuals other than plaintiff's attorney and expert witness, which amounts to a deduction of $2,365.00. Defendant urges that Mr. Sorensen's airfare, which cost plaintiff $2,207.00, be

---

**8.** Plaintiff does not seek to recover its filing fee of $120.00 and deposition costs of $6,451.60, as those costs were previously contained in plaintiff's unopposed Cost Bill.

**9.** Defendant seeks to reduce plaintiff's recovery for four hours of attorneys' fees incurred researching "recoverability for costs of travel, expenses of trial," found on an invoice dated August 31, 2001. Although the court will disallow certain of those travel costs, the court is not convinced that the hours expended researching these costs were not reasonably incurred. As compared to plaintiff's failure to research the appeal of *Levernier*, plaintiff's claim is not completely erroneous, at least as it is not necessarily a foregone conclusion that a plaintiff cannot recover the costs and expenses of an individual not licensed as an attorney or qualified as an expert. The circumstances of this case, however, do not warrant such recovery.

**10.** Together with plaintiff's claim for pretrial expenses, this item illustrates the lavishing of judicial resources, *Naporano* notwithstanding, on the item-by-item review of claimed legal fees and expenses. Could the Supreme Court in *Hensley*, and Congress by its re-enactment of the EAJA, have contemplated the level of detail that an EAJA analysis requires? A modest proposal from the bench is to prescribe a preprinted form for listing each amount claimed, itemized by category, broken down into designated tasks performed, and, cross-referenced to supporting documentation for each item. In this case the Department of Justice took the laboring oar of trying to make sense out of plaintiff's claim, which seems unfair and cannot be what Congress intended.

denied as plaintiff's use of Mr. Sorensen was not reasonably necessary for the prosecution of its case. The court rejects this position for the reasons stated previously. Defendant then seeks to exclude the airfare as an unreasonable expense, on the ground that Mr. Sorensen's airfare from Pasadena, California, to Washington, DC, is greater than that of plaintiff's counsel, traveling by air from La Jolla, California, and plaintiff's employees flying from Beaumont, California. It notes that Mr. Sorensen obtained his ticket three days later than the others and argues "[i]f this delay dramatically increased the cost of Mr. Sorensen's flight, it would be unreasonable to bill this poor planning by Baldi to the Government." Def.'s Br. filed Feb. 7, 2002, at 17. The court rejects this argument. The court will not second guess such minutiae of trial such as the date on which an expert witness obtains an airline ticket. Furthermore, given the vagaries of the pricing of tickets for air travel, ticket prices often fluctuate dramatically during a single day, and plaintiff hardly can be charged with acting unreasonably or negligently when it delayed three days in obtaining a ticket, even if it resulted in a greater ticket price. Defendant does not challenge the $473.00 for airfare incurred by plaintiff's attorney. Plaintiff's total recovery for airfare incurred at trial is thus $2,680.00.

■■■ Defendant next argues that plaintiff's attorney cannot recover for his hotel expenses during his stay during trial, noting that the hotel bill appears as an aggregate charge on credit card receipts representing the cost of all witnesses, thus precluding the court from segregating his charges.[11] The court notes that, although not mentioned by defendant, its argument applies equally to the hotel charges incurred by Mr. Sorensen and paid for directly by Ms. Saunders. In any case, defendant correctly remarks that, in the absence of an actual receipt from the hotel, plaintiff has not provided the court with "the individual room rates or any further relevant information, such as the dates of occupancy, the quality of the rooms, whether room-service charges had been incurred, etc.," by which the court could assess the reasonableness of the hotel charges. Def.'s Br. filed Feb. 7, 2002, at 18. The court has considered calculating the charges per capita and reducing them accordingly. However, when the total hotel charges are divided by seven, the number of individuals plaintiff brought to trial, the court reaches an average hotel charge of $1,470.13. Divided by five nights of trial, this represents a rather high rate of approximately $294.00 per night per person. Plaintiff had an opportunity to reply to defendant's argument and either produce actual receipts or explain the nature of the hotel charges. It elected silence. Because the court is unable to assess the reasonableness of the hotel charges, the court declines to award them.

Plaintiff includes in its request for airfare, a $40.00 charge identified only as a "package/tour charge to airfare to trial." According to the accompanying American Express statement, this charge was made to "Beaumont Travel Serv." and appears in the nature of a fee charged by plaintiff's travel agent. Plaintiff does not substantiate further or explain this charge, although the court notes that the same American Express statement contains two $10.00 charges to Beaumont that plaintiff does not now claim as recoverable expenses. The court does not find this charge substantiated within the meaning of *Naporano* and thus does not include this charge in plaintiff's recovery for trial travel. Plaintiff's recovery for travel to trial is thus $2,680.00.

### 3) Delivery/facsimile charges

Plaintiff claims $973.48 in pretrial delivery/facsimile charges and $973.15 delivery/facsimile charges incurred at trial. Plaintiff's attorney's invoices list some of these expenses merely as "Fed Ex charge to North Carolina," for example, or sometimes simply "Fed Ex expense." Although stand-

11. The charges are as follows: $2,550.86 and $2,689.05 on a MasterCard statement and $2,486.67 and $2,564.36 on an American Express statement representing hotel charges at the JW Marriott Hotel, for a total of $10,290.94.

According to the Saunders Affidavit, Mike Baldi, Sam Baldi, Debbie Saunders, Pat Baldi, Robert Valentine, William Braun, Esq., and Craig Sorensen traveled to Washington, DC, to participate in plaintiff's trial.

ing alone these statements would not support a finding that they represent contemporaneous itemization of charges, they appear on invoices that also include statements explaining attorney time and travel relating to depositions in North Carolina, for example, or to the preparation of documents "forwarded" to defendant or other parties and the court. As for charges for deliveries sent to the "Claims Court," plaintiff had sent numerous exhibits to the court in advance of trial. The court has reviewed all of the disputed charges and found that the majority of the delivery charges are reasonable.

With respect to deliveries sent to the court following trial, the invoices reveal that one charge was incurred in relation to plaintiff's EAJA application. The other, however, in the amount of $16.90 on an invoice dated June 30, 2001, is the only item appearing on the invoice, and the court thus cannot infer its reasonableness. Moreover, a charge of $43.28 found on an August 31, 2000 invoice must be discounted because on the photocopy sent by plaintiff the description is illegible. Further, a charge of $185.50 found on a February 28, 2001 invoice and described as "ALSSI filing fee" must be discounted as unsubstantiated; the invoice does not explain the nature of "ALSSI" and the activity itemized on the invoice has no mention of filing or the preparation of a document for filing. These unrecoverable expenses amount to $245.68.

Finally, eight of these invoices, totaling $321.89, represent deliveries made to plaintiff at its Washington, DC hotel after the conclusion of trial. Defendant challenged these expenses in its response brief, but plaintiff, in reply, chose not to address the peculiarity of these deliveries. The court thus excludes them from plaintiff's recovery, increasing the non-compensable amount of shipping charges to $567.57. Plaintiff's total recovery for pre— and post-trial shipping charges thus is $405.91. Defendant does not challenge the $973.15 claimed for delivery/facsimile expenses incurred during trial. Plaintiff's total recovery for shipping and related charges thus is $1,379.06.

### 4) *Copy expenses*

Plaintiff claims $5,177.62 for copy expenses, all incurred pretrial. The court has reviewed the invoices and determines that $500.00 representing a deposit made to McGee Reprographics should be discounted. This charge appears on both the June 30, 1999 invoice and the July 31, 1999 invoice, but, according to McGee Reprographics's own invoice, only one such deposit was made. The court, however, rejects defendant's argument that an additional $500.00 must be discounted on ground that, although in its September 30, 1999 invoice, plaintiff's attorney seeks recovery of $2,604.00, McGee Reprographics credited that amount. The McGee Reprographics invoice includes a handwritten notation that a $500.00 deposit was made with check # 1204, but the invoice itself does not reflect the $500.00 deduction. Plaintiff does make this type of error as to charges incurred to Quality Photo Services. On its July 31, 1999 invoice, plaintiff's attorney claims a $500.00 deposit to Quality Photo and on its September 30, 1999 invoice claims $825.00 paid to Quality Photo. The Quality Photo invoice for $825.00, however, includes a deduction for the $500.00 deposit and seeks payment for only $325.00. Together, these two errors reflect $1,000.00 in duplicative billing. Finally, the court disallows $76.68 described on the July 31, 1999 invoice as "Legal Reprographics charge for copies," because it is not supported by an accompanying invoice. In sum, these deductions total $1,076.68, yielding a recovery of $4,100.94.

Expenses, too, may be awarded on a *pro rata* basis. *Cmty. Heating*, 2 F.3d at 1146. The court, in its discretion, declines to so reduce plaintiff's recovery for costs/expenses.

Plaintiff's EAJA application is granted as to the following amounts:

| | |
|---|---|
| Attorneys' Fees: | $ 42,199.43 |
| Expert Fees: | $ 41,119.82 |
| Costs: | |
|     Pretrial Travel | $ 1,832.99 |
|     Trial Travel | $ 2,680.00 |
|     Shipping/fax | $ 1,379.06 |
|     Copy expenses | $ 4,100.94 |
| | |
| **TOTAL** | $ 93,312.24 |

## CONCLUSION

Accordingly, based on the forgoing, the Clerk of the Court shall enter judgment for plaintiff on its application for fees and expenses under the EAJA in the amount of $93,312.24.

**IT IS SO ORDERED.**

No costs on the application.