**FILTRATION DEVELOPMENT CO., LLC, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

No. 03–2835C.

United States Court of Federal Claims.

Originally Filed Under Seal Jan. 14, 2005.

Reissued for Publication Feb. 3, 2005.

**614**

Robert S. Metzger, Washington, D.C., attorney of record for plaintiff, and Bryan B. Arnold and Mary Ita Snyder, of counsel.

David A. Harrington, Department of Justice, Washington, D.C., with whom was Assistant General Peter D. Keisler, for defendant. David M. Cohen, Director, and Robert E. Kirschman, Jr., Assistant Director.

Timothy J. Ryan, U.S. Department of the Army, of counsel.

### OPINION and ORDER

FUTEY, Judge.

This matter in a bid protest case is before the court on plaintiff's application for attorney fees and expenses pursuant to the Equal Access to Justice Act (EAJA). The parties' arguments in these proceedings closely trace the EAJA's statutory requirements and are directed toward entitlement as well as quantum. Defendant maintains that plaintiff's application was untimely and should be denied solely on that basis. The parties dispute whether plaintiff can properly be characterized as a prevailing party. The parties contest whether defendant's position, both at the agency level and during the course of this litigation, was substantially justified. The parties also disagree as to whether plaintiff has demonstrated the existence of special factors justifying a departure from the $125 per hour statutory cap. Lastly, defendant asserts that several individual fees requested by plaintiff are unreasonable.

### Factual Background [1]

In the underlying action, the Department of the Army (Army) invoked the unusual and compelling urgency exception to the Competition in Contracting Act (CICA) to procure 240 engine inlet barrier filters (IBF) for the UH–60 Blackhawk helicopter. The helicop-

---

1. Only facts relevant to this opinion are summarized herein. The facts were discussed in greater detail in the court's opinion denying defendant's motion to dismiss, *Filtration Dev. Co., LLC v. United States,* 59 Fed.Cl. 658, 660–61 (2004), and in the court's opinion on the parties' cross-motions for judgment on the administrative record, *Filtration Dev. Co., LLC v. United States,* 60 Fed. Cl. 371, 373–74 (2004).

ters and their newly configured filter systems were to be deployed to Iraq in conjunction with the scheduled troop rotation in March 2004. On December 18, 2003, plaintiff brought suit in this court challenging the Army's procurement.

After several rounds of extensive briefing and oral arguments, the court held that the Army had not limited the procurement to the number of IBF kits necessary to satisfy the current emergency and had extended the exception's application beyond the minimum time duration. Further, the court held that the Army had run afoul of Organizational Conflict of Interest (OCI) regulations. Specifically, the court held that: (1) the Contracting Officer (CO) did not recognize the conflict "as early in the acquisition process as possible;"[2] (2) the contract was improperly awarded to a contractor who provided systems engineering and technical direction (SETA); (3) the CO unreasonably determined that an OCI did not exist; and (4) the CO usurped the authority of the chief of the contracting office in concluding that the mitigation plans adequately addressed the conflict.

The court continued its analysis by examining whether the factors necessary for a permanent injunction had been met and ultimately determined that national security and national defense considerations prevented it from enjoining the contract in its entirety. The court, however, enjoined the Army from procuring more than 183 "A kits" and 150 "B kits" under its current Justification and Approval (J & A). The court based its conclusion on the amount of funding the Army had allocated as well as on the absence of a delivery schedule beyond July 2004. Further, the court directed the Army to procure any additional kits through full and open competition, unless an independent justification for invoking an exception was provided. Lastly, the court declined to prevent Aerospace Filtration Systems (AFS) from competing for future IBF contracts as well as from participating in any trade studies.

The court's opinion on the parties' cross-motions for judgment on the administrative record was issued on April 13, 2004, and plaintiff, therefore, had until July 12, 2004, within which to file its EAJA application.[3] The Clerk's office received plaintiff's application on that date, however, the court returned the documents to plaintiff for correction of procedural deficiencies.[4] On July 21, 2004, plaintiff resubmitted its application with the necessary corrections. After being granted several extensions of time, defendant filed its opposition to plaintiff's application on September 13, 2004. Plaintiff filed its reply on September 30, 2004.

Subsequently, on October 14, 2004, plaintiff filed a civil contempt motion alleging that the Army had violated the court's April 13, 2004, opinion and order by invoking the unusual and compelling urgency exception to procure additional IBF kits. The court stayed resolution of plaintiff's EAJA application pending resolution of that motion. After hearing oral argument on the matter, the court denied plaintiff's motion on December 17, 2004. The court now turns to the merits of plaintiff's EAJA application.

### Discussion

The United States Supreme Court (Supreme Court) has consistently given credence to the "American Rule" which requires each party to bear its own attorney fees unless a statute provides otherwise. *Hensley v. Eckerhart*, 461 U.S. 424, 429, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983) (citing *Alyeska Pipeline Serv. Co. v. Wilderness Society*, 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975)). The EAJA is a specific waiver of sovereign immunity providing for attorney fees and, like all such waivers, is to be narrowly construed. *Chiu v. United States*, 948 F.2d 711, 714 (Fed.Cir.1991). The purpose of the EAJA is to minimize the burden of legal expense where a challenge of unreasonable government action is necessary. *Gavette v. OPM*, 808 F.2d 1456, 1459–60 (Fed.

---

2. 48 C.F.R. § 9.504(a)(1).

3. Plaintiff previously filed its Bill of Costs on April 28, 2004. On June 10, 2004, the Clerk of the Court awarded plaintiff $570.00 in costs.

4. *Filtration Dev. Co., LLC v. United States,* No. 03–2835 (Fed.Cl. July 15, 2004) (order returning plaintiff's documents for corrections).

**616**

Cir.1986) (en banc); accord *Cmty. Heating & Plumbing Co. v. Garrett,* 2 F.3d 1143, 1145 (Fed.Cir.1993) (explaining that Congress enacted the EAJA to "eliminate legal expenses as a barrier to challenges of unreasonable government action"). The EAJA is not, however, a mandatory fee shifting statute. *Gavette,* 808 F.2d at 1465.

Section 2412(d)(1)(A) of the EAJA reads as follows:

> Except as otherwise specifically provided by statute, a court shall award to a prevailing party other than the United States fees and other expenses ... incurred by that party in any civil action ... brought by or against the United States ... unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.

The EAJA elaborates that "reasonable attorney fees" are encompassed within the category of "fees and other expenses." 28 U.S.C. § 2412(d)(2)(A). While the EAJA directs that the amount of "reasonable attorney fees" be calculated on the basis of the "prevailing market rates for the kind and quality of the services furnished," it simultaneously caps the amount at $125 per hour. *Id.* The $125 figure can be exceeded, however, if "the court determines that an increase in the cost of living or a special factor, such as the limited availability of qualified attorneys for the proceedings involved, justifies a higher fee." *Id.* § 2412(d)(2)(A)(ii).

A claimant corporation, the net worth of which is less than $7,000,000, and who employs less than 500 people, at the time of suit, may file an application for attorney fees and costs under the EAJA. 28 U.S.C. § 2412(d)(2)(B). The EAJA also provides that the party seeking an award of fees must submit to the court an application that "shows ... the amount sought, including an itemized statement from any attorney or expert witness representing or appearing [on] behalf of the party stating the actual time

expended and the rate at which fees and other expenses were computed." *Gonzalez v. United States,* 44 Fed.Cl. 764, 769 (1999) (quoting 28 U.S.C. § 2412(d)(1)(B)).

*I. Timeliness*

■ Defendant maintains that plaintiff's EAJA application was untimely. In particular, defendant asserts that plaintiff's application was filed nine days after the statutory thirty-day time period had expired. On the other hand, plaintiff contends that its application was submitted within thirty days of final judgment. Plaintiff avers that a pleading is considered filed when "it is delivered to the clerk of the court." [5] Further, plaintiff maintains that lack of compliance with local court procedural rules does not preclude a finding that the document was filed. Plaintiff also asserts that, pursuant to case law, it was permitted to amend its EAJA application to include the missing or incomplete components. The court agrees with plaintiff.

Although plaintiff's EAJA application contained minor procedural defects, it was submitted to the court within the thirty-day time period. See 28 U.S.C. § 2412(d)(1)(B). Other federal courts as well as legal scholars have concluded that the focal point of the analysis should center on the date the Clerk of the Court was in receipt of the pleading. *Bragg v. Bill Heard Chevrolet, Inc.,* 374 F.3d 1060, 1064 n. 4 (11th Cir.2004) ("Several circuits have determined that pleadings should be deemed filed on the date submitted to the clerk."); *United States ex rel. Mathews v. HealthSouth Corp.,* 332 F.3d 293, 296 (5th Cir.2003) ("A pleading, including a complaint, is considered filed when placed in the possession of the clerk of the court.") (citing *McClellon v. Lone Star Gas Co.,* 66 F.3d 98, 101 (5th Cir.1995)).[6] Accordingly, plaintiff's EAJA application submitted to the Clerk of the Court on July 12, 2004, was timely.

Once plaintiff's EAJA application was deemed filed, plaintiff could permissibly,

**5.** Plaintiff's Reply Brief In Support Of Its Motion For Attorneys' Fees And Expenses Under The Equal Access To Justice Act (Pl.'s Reply) at 1.

**6.** See also 4B Wright & Miller, Federal Practice & Procedure § 1153, at 471 (explaining that "papers and pleadings ... are considered filed when they are placed in possession of the clerk ... which simply means delivery to the appropriate office at the courthouse").

within limits, correct the procedural defects in its application. *Scarborough v. Principi,* 541 U.S. 401, 124 S.Ct. 1856, 1867, 158 L.Ed.2d 674 (2004) (holding that a plaintiff could amend its EAJA application to include an allegation that the government's position was not substantially justified); *Bazalo v. West,* 150 F.3d 1380, 1382 (Fed.Cir.1998) (holding that an EAJA applicant may supplement its application to demonstrate eligibility); *California Marine Cleaning, Inc. v. United States,* 43 Fed.Cl. 724, 728 (1999) (allowing a party to amend its EAJA application to satisfy the eligibility requirement as well as the "under oath" requirement); cf. *Baker v. DHHS,* 61 Fed.Cl. 669, 673 (2004) (explaining that the court would have allowed the petitioner in a Vaccine Act case to supplement a motion for review after the thirty-day time limit had passed). Further, the government does not argue, nor could it, that it was in any way prejudiced. *Scarborough,* 124 S.Ct. at 1870; *Bazalo,* 150 F.3d at 1382. Plaintiff, therefore, was properly afforded an opportunity to correct its application's shortcomings after the date it was technically filed.

## II. *Eligibility*

The EAJA defines the term "party" and imposes several preliminary eligibility requirements. When the action is not maintained by an individual, but rather some sort of entity, a party is defined as "any owner of an unincorporated business, or any partnership, corporation, association, unit of local government, or organization, the net worth of which did not exceed $7,000,000 at the time the civil action was filed, and which had not more than 500 employees at the time the civil action was filed ...." 28 U.S.C. § 2412(d)(2)(B)(ii). Defendant does not contest this aspect of plaintiff's application. Nevertheless, plaintiff has extensively detailed through balance sheets prepared by outside accountants, declarations and exhibits, that it employed significantly less than 500 employees and its net worth was well

below the $7 million mark at the time the action was filed.

## III. *Prevailing Party*

Defendant maintains that plaintiff is not a prevailing party because the injunction and judgment in this case did not alter the legal relationship between the parties. Defendant contends that an OCI violation unaccompanied by judicial relief is insufficient to confer prevailing party status. Defendant asserts that the court's judgment permitted the Army to procure the full 183 "A kits" and 150 "B kits" specified in the contract. Further, defendant relies on the court's refusal to enjoin AFS from participating in the reinstituted trade study or in future procurements. Defendant also points to its ability to procure additional IBF kits without full and open competition if an independent justification for an exception is provided.

As an initial matter, defendant severely misconstrues the court's holding as well as the position defendant advanced during the prior proceedings in this case. The court, therefore, will take a moment to refresh defendant's recollection and put an end to the confusion. It is undisputed that the J & A authorized the procurement of 240 IBF kits. Defendant argued in its motion for judgment on the administrative record that "[i]n the event that funds are available to obtain additional IBF kits upon definitization of line item prices, the Army anticipates purchasing additional kits up to the total of 240 authorized by the J & A." [7] These sentiments were echoed during oral argument when defendant's counsel unequivocally stated that "[t]he Army has sought, and still is seeking to get as close to 240 kits as it can." [8] Several minutes later, defendant's counsel again reiterated the Army's position: "the Army has always sought 240 kits because that is what they need ...." [9] These statements make clear that defendant was seeking the authority to procure 240 IBF kits.

7. Defendant's Motion For Judgment Upon The Administrative Record at 13 n. 10.

8. Transcript of Oral Argument (Mar. 31, 2004) at 37.

9. *Id.* at 38.

■ "A typical [and generous] formulation" used to define the meaning of a prevailing party is that "plaintiffs may be considered 'prevailing parties' for attorney's fees purposes if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit." *Nadeau v. Helgemoe,* 581 F.2d 275, 278–79 (1st Cir.1978). Another formulation of the term requires the plaintiff "to point to a resolution of the dispute which changes the legal relationship between itself and the defendant." *Texas State Teachers Ass'n v. Garland Indep. Sch. Dist.,* 489 U.S. 782, 792–93, 109 S.Ct. 1486, 103 L.Ed.2d 866 (1989); *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health and Human Resources,* 532 U.S. 598, 604, 121 S.Ct. 1835, 149 L.Ed.2d 855 (2001); *Halpern v. Principi,* 384 F.3d 1297, 1303 (2004). The plaintiff is not required to prevail on every issue to be deemed a prevailing party. *Austin v. Dep't of Commerce,* 742 F.2d 1417, 1420 (Fed.Cir. 1984). These standards have certainly been met here.

■ In this case, the court held that defendant failed to comply with OCI regulations and exceeded the permissible bounds of CICA's unusual and compelling urgency exception. While defendant argued that these holdings are irrelevant without an enforceable judgment, that argument crumbles with an accurate assessment of the court's previous holding. Defendant was enjoined from procuring any filters in excess of 183 "A kits" and 150 "B kits." Without emphasizing the obvious, that is significantly below the 240 IBF kits defendant had adamantly requested—57 kits to be exact. As defendant correctly points out, plaintiff did not seek to require defendant to issue a new J & A to procure additional IBF kits. Plaintiff did, however, seek to limit defendant's procurement under the current J & A. Plaintiff obtained the relief it was seeking and the fact that defendant will have to prepare a new J & A as result of its previous shortcomings does not alter the analysis.

In determining whether a party was a prevailing party, courts have not declined to confer such status merely because the party did not secure every aspect of the relief it was seeking. For instance, in *Farrar v. Hobby,* the plaintiff sought $17 million in compensatory damages for an alleged civil rights violation. *Farrar v. Hobby,* 506 U.S. 103, 106, 113 S.Ct. 566, 121 L.Ed.2d 494 (1992). After several appeals and remands, the plaintiff was only awarded nominal damages. *Id.* at 112, 113 S.Ct. 566. In other words, the plaintiff sought $17 million but was only awarded $1. The Supreme Court nevertheless held that the plaintiff was a prevailing party for EAJA purposes. *Id.* In addition, in *Neal & Co., Inc. v. United States,* the plaintiff prevailed on only four out of nine claims and received only 11.5% of its requested damages. *Neal & Co., Inc. v. United States,* 121 F.3d 683, 686 (Fed.Cir.1997). The United States Court of Appeals for the Federal Circuit (Federal Circuit) still held that the plaintiff was a prevailing party. *Id. Farrar* and *Neal & Co.* establish that the degree of success is not determinative of whether a party can be considered a prevailing party. Rather, the focus is on whether there has been an alteration to the legal relationship between the parties.

It, therefore, does not matter under this prong whether plaintiff has achieved complete success. In other words, there is no difference here between securing an injunction for, say, 180 kits, as opposed to only 57. The permanent injunction in this case altered the legal relationship between the parties and that is sufficient to confer prevailing party status. *California Marine Cleaning,* 43 Fed.Cl. at 725 ("[The plaintiff] was clearly the prevailing party in that it obtained injunctive relief in this bid protest proceeding."); *PCI/RCI v. United States,* 37 Fed.Cl. 785, 788 (1997) (noting that the government had conceded that the plaintiff was the prevailing party because the court awarded injunctive relief); *Dairy Maid Dairy, Inc. v. United States,* 837 F.Supp. 1370, 1383 (E.D.Va.1993) (explaining that a permanent injunction had been issued and that "[t]he Army [did] not dispute that [the plaintiff was] a prevailing party"). Accordingly, plaintiff was the prevailing party in this lawsuit.

## IV. *Substantial Justification*

The government bears the burden of proving that its position was substantially justified. *California Marine Cleaning,* 43 Fed. Cl. at 729 (citing *Doty v. United States,* 71 F.3d 384, 385 (Fed.Cir.1995)). The Supreme Court has defined "substantially justified" as meaning " 'justified in substance or in the main'—that is, justified to a degree that could satisfy a reasonable person." *Larsen v. United States,* 39 Fed.Cl. 162, 167 (1997) (quoting *Pierce v. Underwood,* 487 U.S. 552, 565, 108 S.Ct. 2541, 101 L.Ed.2d 490 (1988)). To satisfy the substantially justified standard, defendant's position must have a reasonable basis in law and fact. *Id.* This determination is to be made on a case-by-case basis. *Gavette,* 808 F.2d at 1467.

The Supreme Court has cautioned against allowing a negative determination on the merits to transcend that phase of the litigation and dictate the results of an inquiry into whether the government's position was substantially justified. *Scarborough,* 124 S.Ct. at 1866. It is conceivable that "the Government could take a position that is not substantially justified, yet win; even more likely, it could take a position that is substantially justified, yet lose." *Pierce,* 487 U.S. at 569. While the two inquiries view the circumstances through different prisms, they are nevertheless somewhat intertwined. *Luciano Pisoni Fabbrica Accessori Instrumenti Musicali v. United States,* 837 F.2d 465, 467 (Fed.Cir.1988) (citing *Federal Election Comm'n v. Rose,* 806 F.2d 1081, 1090 (D.C.Cir.1986)). The United States Court of Appeals for the District of Columbia (D.C.Circuit) has gone as far as to state that "[i]n some cases, the standard of review on the merits is so close to the reasonableness standard applicable to determining substantial justification that a losing agency is unlikely to be able to show that its position was substantially justified." *F.J. Vollmer Co., Inc. v. Magaw,* 102 F.3d 591, 595 (D.C.Cir. 1996).

Before turning to the merits of defendant's position, an antecedent issue needs to be addressed. Plaintiff raised multiple issues in its amended complaint, and defendant was obligated to advance a position in response to each of plaintiff's allegations. In particular, plaintiff maintained that defendant violated OCI regulations as well as CICA provisions. The court's ultimate conclusion, however, concerning whether the government's position was substantially justified is a "one-time threshold for fee eligibility." *Comm'r, INS v. Jean,* 496 U.S. 154, 160, 110 S.Ct. 2316, 110 L.Ed.2d 134 (1990). The court "treat[s][the] case as an inclusive whole, rather than as atomized line-items." *Id.* at 162, 110 S.Ct. 2316. The court's single determination "encompass[es] both the agency's prelitigation conduct and the Department of Justice's subsequent litigation positions ...." *Id.* at 159, 110 S.Ct. 2316. Nevertheless, while the court undertakes its task of examining the government's position aware that it must reach a single conclusion, the court believes that an analysis of the positions the government took in response to plaintiff's allegations is pertinent to the court's final determination. *KMS Fusion, Inc. v. United States,* 39 Fed.Cl. 593, 598–600 (1997) (analyzing the issues raised in the case separately when determining whether the government's entire position was substantially justified).

### A. *OCI Regulations*

■ Plaintiff maintains that the government's conduct at the agency level and during litigation in regard to compliance with OCI regulations was not substantially justified. Plaintiff contends that the CO "failed to comply with the clear requirements of unambiguous procurement regulations." [10] Plaintiff asserts that the CO did not identify the OCI "as early in the acquisition process as possible." 48 C.F.R. § 9.504(a)(1). Plaintiff avers that the CO unreasonably concluded that a significant OCI did not exist. Further, plaintiff maintains that the CO improperly awarded a contract for components parts to a SETA contractor. Plaintiff also contends that the CO did not adhere to OCI procedural requirements.

---

10. Plaintiff's Motion For Attorneys' Fees And Expenses Pursuant To The Equal Access To Justice Act (Pl.'s Appl.) at 8.

Defendant, on the other hand, maintains that OCI regulations were not disregarded; rather, the Army took steps to mitigate the OCI. Defendant asserts that the Army "made reasonable and good faith efforts to comply with all procurement requirements, including the FAR's [Federal Acquisition Regulations] [OCI] requirements, at a time when personnel were stretched thin ... to meet directives to develop, test, procure and deploy an IBF system urgently needed to support combat units in Iraq." [11]

As the court has indicated throughout the course of these proceedings, procurement regulations cannot be cast aside when an emergency situation arises.[12] The court must examine the governing regulations to ascertain whether they were ambiguous and whether the government could have legitimately misconstrued their dictates. If the regulations are clear and unambiguous, the case law has consistently held that the government's divergent position lacked substantial justification.

In *Role Models America*, the D.C. Circuit examined whether the Secretary of the Army (Secretary) complied with regulations pertaining to the disposal of excess military property. *Role Models America, Inc. v. Brownlee*, 353 F.3d 962, 964 (D.C.Cir.2004). The D.C. Circuit concluded that the Secretary violated the regulations by failing to provide adequate notice. *Id.* at 965. In analyzing whether the government's position was substantially justified for EAJA purposes, the D.C. Circuit looked at the applicable regulation, 24 C.F.R. § 586.20(c)(1), which provided that the Secretary "shall [p]ublish ... the time period during which [the agency] will receive notices of interest from ... representatives of the homeless[ ] and other interested parties." *Id.* at 967 (emphasis omitted). The D.C. Circuit did not hesitate to note the regulations' "clarity,"

and that the regulations set forth their requirements "in no uncertain terms." *Id.* The D.C. Circuit concluded by stating that "the regulations were so clear and the Secretary's failure to comply with them so obvious that his actions could not 'appear correct to a reasonable person.' " *Id.* (quoting *Trahan v. Brady*, 907 F.2d 1215, 1220 (D.C.Cir.1990)); see also *F.J. Vollmer*, 102 F.3d at 593 (holding that the government's position was not substantially justified where "it was wholly unsupported by the text, legislative history, and underlying policy of the governing statute").

The United States Court of Federal Claims (Court of Federal Claims) reached an analogous conclusion in *PCI/RCI v. United States*, 37 Fed.Cl. 785 (1997). In *PCI/RCI*, a bid submitted by a joint venture (the plaintiff) was signed only by the managing partner for the project. *PCI/RCI*, 37 Fed.Cl. at 787. The government determined that each of the participants in the joint venture were required to sign the bid. *Id.* After the plaintiff failed to provide the required signatures, its bid was deemed non-responsive. *Id.* On the merits, this court determined the CO relied on the incorrect FAR provision and defendant's position was "flat out wrong." *Id.* at 789. When analyzing the plaintiff's EAJA application, this court concluded that the government's position was not substantially justified. This court noted that the CO "continually misapplied FAR § 4.102(d)" and "misconstrued the FAR." *Id.* at 790. Further, the court explained that the government's position "lacked a reasonable basis in both law and fact" because, *inter alia*, "[it] was contrary to established legal principles, and was a continued misconstruction of procurement regulations." *Id.*[13]

Turning to the case at bar, 48 C.F.R. § 9.504(a)(1) requires the CO to "[i]dentify

---

**11.** Defendant's Response To Plaintiff's Motion For Attorneys' Fees And Expenses Pursuant To The Equal Access To Justice Act (Def.'s Resp.) at 9.

**12.** Focusing on this basic premise, the court concludes that the other circumstances surrounding this case do not rise to the level of "special circumstances" which would render an "award unjust." See 28 U.S.C. § 2412(d)(1)(A).

**13.** The United States District Court for the Eastern District of Virginia likewise reached the same conclusion in *Dairy Maid*. The district court found that the government's position was not substantially justified where its "position ignored the clear and mandatory language of 31 U.S.C. § 3553(d)(2) ...." *Dairy Maid*, 837 F.Supp. at 1384.

and evaluate potential organizational conflicts of interests as early in the acquisition process as possible." There is nothing ambiguous about this provision. As the court previously explained, there was no recognition of any conflict in either May 2003 when discussions with AFS began, or in August 2003 when UHPMO (Utility Helicopters Project Management Office) directed Sikorsky Aircraft Company to incorporate the AFS filter. Defendant's failure to act, therefore, directly contravened a clear FAR regulation.

The court reaches the same conclusion with respect to 48 C.F.R. § 9.506(b) & (c), which, in pertinent part, read as follows:

> If the contracting officer decides that a particular acquisition involves a significant potential organizational conflict of interest, the [CO] shall, before issuing the solicitation, submit for approval to the chief of the contracting office ... [a] written analysis, including a recommended course of action for avoiding, neutralizing, or mitigating the conflict .... The approving official shall ... [a]pprove, modify or reject the recommendations in writing.

The court has no difficulty construing this provision. In its previous opinion, the court determined that the CO unreasonably concluded that an OCI did not exist. The court explained that other government personnel recognized the existence of a potential conflict, and at least two proposed mitigation plans were submitted. Once the significant OCI was recognized, the FAR mandated that the CO submit "a recommended course of action" to the "chief of the contracting office." 48 C.F.R. § 9.506(b). The CO's failure to accomplish this task violated the clear mandates of the FAR. Further, the CO's decision that the appropriate safeguards were in place likewise runs directly contrary to the FAR requirement that the chief of the contracting office shall "[a]pprove, modify or reject the recommendations in writing." *Id.* § 9.506(c)(3). Once again, defendant disregarded an unambiguous FAR provision.

Finally, the court does not discern any elusive language in 48 C.F.R. § 9.505–1(a), which explains that "[a] contractor that provides systems engineering and technical direction for a system but does not have overall contractual responsibility for its development, its integration, assembly, and checkout, or its production shall not ... be a subcontractor ... to a supplier of the systems or any of its major components." In the event a CO reading 48 C.F.R. § 9.505–1(a) needed further guidance, the FAR clarifies its mandate with an example: "Company A agrees to provide systems engineering and technical direction for the Navy on the powerplant for a group of submarines .... Company A should not be allowed to supply any powerplant components." 48 C.F.R. § 9.508(a). By awarding a contract to AFS, an affiliate of Westar Corporation, the Army failed to comply with this straightforward FAR provision.

When analyzed through the "EAJA prism," the Army's actions and the government's litigation position supporting those actions are not substantially justified. *Rose,* 806 F.2d at 1090 (explaining that the court should "examine through an EAJA prism both the Government's litigation position and the conduct that led to the litigation"). There is no justification for the government's position when clear, unambiguous regulations directly contradict that position. This case presents a situation and result no different than in *Role Models America, F.J. Vollmer, Dairy Maid,* and *PCI/RCI.* Plainly stated, the FAR regulations "were so clear and the [Army's] failure to comply with them so obvious that [its] actions could not 'appear correct to a reasonable person.'" *Role Models America,* 353 F.3d at 967 (quoting *Trahan,* 907 F.2d at 1220).

## B. *Unusual and Compelling Urgency Exception*

■ Plaintiff asserts that the government's position with respect to the unusual and compelling urgency exception was not substantially justified. Plaintiff maintains that the government determined its overall needs without consideration of the minimum needs necessary to satisfy the emergency situation. Plaintiff also takes issue with the manner in which defendant prepared the J & A. Further, plaintiff avers that the government did not "request offers from as many potential sources as is practicable under the

circumstances." [14] Plaintiff also avers that the government was required to conduct market research, which it allegedly did not.

Defendant, on the other hand, maintains that "the Army's decision to invoke CICA's 'unusual and compelling urgency' exception in order to expedite the delivery and installation of UH–60 IBF kits was reasonable and, therefore, substantially justified." [15] Defendant also asserts that the context of the action and the outcome demonstrate that its position was substantially justified.

The unusual and compelling urgency exception to CICA provides:

> The head of an agency may use procedures other than competitive procedures only when . . . (2) the agency's need for the property or services is of such an unusual and compelling urgency that the United States would be seriously injured unless the agency is permitted to limit the number of sources from which it solicits bids or proposals.

10 U.S.C. § 2304(c)(2); 48 C.F.R. § 6.302–2(a)(2). The invocation of the unusual and compelling urgency exception is constrained by several inherent limitations as to scope and duration. The court recognized that "the agency [must] take reasonable steps to accurately determine its needs and describe them." *Filtration Dev. Co., LLC, v. United States,* 60 Fed.Cl. 371, 381 (2004) (quoting *Matter of: Signals & Sys., Inc.,* B–288107, 2001 CPD ¶ 168, at 12, 2001 WL 1150705, at *9 (Comp.Gen. Sept. 21, 2001)). The court also emphasized that "the urgency justification cannot support the procurement of more than a minimum quantity needed to satisfy the immediate urgent requirement." *Id.* In addition, the court held that invocation of the exception "should not continue for more than a minimum time." *Id.* (quoting *Matter of: Tri–Ex Tower Corp.,* B–239628, 90–2 CPD ¶ 221, at 5, 1990 WL 278490, at *4 (Comp. Gen. Sept.17, 1990)).[16]

As an initial matter, defendant's argument on this issue is overly narrow. The parties are in agreement that the government's position with respect to invoking the unusual and compelling urgency exception was substantially justified. For that matter, the court expressly held in its previous opinion that plaintiff conceded the existence of an emergency justification. *Id.* at 381. The court also held, in the alternative, that plaintiff's argument that no emergency situation existed failed on the merits. *Id.* at 381–82. The court's analysis of this issue in this stage of the litigation, therefore, analytically takes place one step above defendant's argument. The court is persuaded that defendant's invocation of the unusual and compelling urgency exception, as well as its defense of that decision, was substantially justified. The court must now, however, examine whether defendant's actions and litigation positions with respect to other aspects of the exception warrant the same conclusion.

The text of 10 U.S.C. § 2304(c)(2) does not provide the same degree of explicit guidance as the regulations pertaining to OCI. Apart from the language of the regulation, however, courts have also looked to the case law interpreting the applicable regulation. *Ramcor Servs. Group, Inc. v. United States,* 41 Fed.Cl. 264, 272 n. 6 (1998), *aff'd,* 185 F.3d 1286 (Fed.Cir.1999); *Dairy Maid,* 837 F.Supp. at 1383–84. In *Dairy Maid,* the district court analyzed whether the government's position with respect to overriding an automatic stay was substantially justified. *Dairy Maid,* 837 F.Supp. at 1383–84. In support of its conclusion, the district court relied on the lack of cases addressing the override provision, and on the inconsistent conclusions reached by the courts in those cases. *Id.* at 1383 (describing the "unsettled condition of the decisional law"). Likewise, in *Ramcor,* this court addressed the issue of whether it had jurisdiction to review an agency's decision to override an automatic stay. *Ramcor,* 41 Fed.Cl. at 266–70. When dis-

---

14. Pl.'s Appl. at 13 (quoting 48 C.F.R. § 6.302–2(c)(2)).

15. Def.'s Resp. at 9.

16. Decisions of the Comptroller General in procurement cases are not binding on this court. Nevertheless, the court may consider and adopt their reasoning in recognition of the Comptroller General's expertise and role in the resolution of contested procurement decisions. *Computer Sciences Corp. v. United States,* 51 Fed.Cl. 297, 308 n. 14 (2002).

cussing whether the defendant's position was substantially justified, this court relied on *Dairy Maid* and noted that "what precedent does exist is both sparse and inconsistent." *Id.* at 272 n. 6.

The case before the court, however, stands in stark contrast to *Dairy Maid* and *Ramcor.* The case law is neither "unsettled" nor "inconsistent." *Id.; Dairy Maid,* 837 F.Supp. at 1383. Rather, the case law makes it clear that the unusual and compelling urgency exception must be limited in both scope and duration. As discussed above, the exception must be limited to the "minimum quantity needed to satisfy the immediate urgent requirement," *Filtration,* 60 Fed.Cl. at 381 (quoting *Matter of: Signals & Sys., Inc.,* B–288107, 2001 CPD ¶ 168, at 12, 2001 WL 1150705, at *9), and "should not continue for more than a minimum time." *Id.* (quoting *Matter of: Tri–Ex Tower Corp.,* B–239628, 90–2 CPD ¶ 221, at 5, 1990 WL 278490, at *4). Against this background, the government's arguments in support of procuring the full 240 IBF kits specified in the J & A lack substantial justification. The government only had a delivery schedule in place until July 2004, yet was asking the court to permit an indefinite extension to allow for future deliveries. The government's argument on its face disregards the "minimum time" proscription. Further, the contract in place during these proceedings contemplated the financing of only 183 "A kits" and 150 "B kits," and at no point was the contract altered to reflect otherwise. The government's argument that it should be permitted to procure 240 kits incorrectly focused on its total needs, as opposed to its emergency needs and, therefore, its position contravened the "minimum quantity" limitation. Accordingly, after taking into the account the agency's actions and litigation positions, the court finds that defendant's position with respect to the unusual and compelling urgency exception was not substantially justified.

In sum, the court holds that the government's position in its entirety was not substantially justified.

---

17. Pl.'s Appl. at 15.

## V. *Statutory Cap*

Plaintiff maintains that it is entitled to attorney fees in excess of the EAJA's $125 per hour statutory cap. Plaintiff avers that its counsel "was uniquely qualified to bring this protest on [its] behalf." [17] Plaintiff asserts that its counsel possessed the "distinctive knowledge" and "specialized skill" necessary to litigate this case. Plaintiff contends that the case involved complex national security issues. Plaintiff maintains that there were a limited number of qualified attorneys who were capable of litigating this case. Plaintiff asserts that it gained expertise in the area of law applicable to this case by representing the intervenor in *Spherix v. United States.* Plaintiff also relies heavily on the fact that the lawsuit was initiated during ongoing military operations in Iraq. Further, plaintiff raises two arguments in the alternative in the event the court declined to award attorney fees at the prevailing market rate. First, plaintiff maintains that the court should adopt the *Laffey* matrix. Second, plaintiff asserts that the court should make a cost of living adjustment.

Defendant maintains that there are no special factors present in this case which warrant awarding attorney fees in excess of the statutory cap. Defendant contends that plaintiff's so-called special factors are the garden variety type rejected by the Supreme Court in *Pierce,* 487 U.S. at 573, 108 S.Ct. 2541. Defendant also asserts that the Federal Circuit has not approved applying the *Laffey* matrix to cases against the government. Defendant, however, does not proffer an argument in opposition to plaintiff's cost of living adjustment.

### A. *Special Factors*

 The EAJA provides that "attorney fees shall not be awarded in excess of $125 per hour unless the court determines that an increase in the cost of living or a special factor, such as the limited availability of qualified attorneys for the proceeding involved, justifies a higher fee." 28 U.S.C. § 2412(d)(2)(A)(ii). The burden is on plaintiff to establish that special factors warrant an award in excess of $125 per hour. *Cox*

*Constr. Co. v. United States,* 17 Cl.Ct. 29, 35 (1989) (citations omitted). Plaintiff "must demonstrate that it is the 'nature of the case,' not the nature of the litigation strategy, that 'renders the proceedings capably handled by only a limited number of attorneys.'" *Id.* at 36 (citations omitted).

The Supreme Court in *Pierce* squarely addressed the issue of what can constitute a special factor:

> [T]he "special factor" formulation suggests Congress thought that [$125] an hour was generally quite enough public reimbursement for lawyers' fees, whatever the local or national market might be. If that is to be so, the exception for "limited availability of qualified attorneys for the proceedings involved" must refer to "qualified for the proceedings" in some specialized sense, rather than just in their general legal competence. We think it refers to attorneys having some distinctive knowledge or specialized skill needful for the litigation in question—as opposed to an extraordinary level of the general lawyerly knowledge and ability useful in all litigation. Examples of the former would be an identifiable practice specialty such as patent law, or knowledge of foreign law or language.

*Pierce,* 487 U.S. at 572, 108 S.Ct. 2541. The Supreme Court also discussed factors which it thought did not fall within the definition of special factor: "The 'novelty and difficulty of issues,' 'the undesirability of the case,' the 'work and ability of counsel' and the 'results obtained,' are factors applicable to a broad spectrum of litigation; they are little more than routine reasons why market rates are what they are." *Id.* at 573, 108 S.Ct. 2541 (citation omitted).

Plaintiff carefully crafts its argument in response to this court's previous holdings. Plaintiff must have been aware that an argument alleging, without more, that government contract law was a specialty rested on shaky ground. *Esprit Corp., Inc. v. United States,* 15 Cl.Ct. 491, 494 (1988) (holding that a contract for remodeling and repair work was not within the "area of federal procurement law ... [which] constitutes the type of specialized skill that justifies an increase in attorney's fees"); see also *Prowest Diversified, Inc. v. United States,* 40 Fed.Cl. 879, 889 (1998). Further, plaintiff was aware that in *California Marine Cleaning,* this court held that a lawyer's "expertise and experience in the field of government contracts and, specifically, bid protests" is an insufficient basis to exceed the EAJA's statutory cap. *California Marine Cleaning,* 43 Fed. Cl. at 732. Plaintiff, therefore, raises the stakes and maintains that "[w]hat set this case apart from the ordinary bid protest case ... was the context in which it occurred— under the backdrop of the war in Iraq. It is this context which involved significant questions of national security and the jurisdiction of the Court, that limited the number of attorneys who could successfully litigate this dispute."[18]

The court is not persuaded that plaintiff has demonstrated its entitlement to attorney fees in excess of the EAJA's statutory cap on the basis of special factors. The resolution of the jurisdictional issue boiled down to simply recognizing that the court possessed the authority to review an agency's action for compliance with applicable regulations. As to other aspects of the litigation, plaintiff devoted a significant portion of its brief to faulting the government for misconstruing unambiguous FAR provisions and cases. After examining the regulations and the cases, the court agreed with plaintiff's argument. Although this litigation occurred during ongoing military operations in Iraq, that military conflict does not change the basic proposition that both plaintiff's counsel and defendant were construing the identical, straightforward FAR regulations and cases. No distinctive knowledge or specialized skill was needed to accomplish that task. Further, assuming *arguendo* that plaintiff's counsel possessed distinctive knowledge or specialized skill, neither was necessary to litigate this case for the reasons just articulated. Accordingly, the court declines to exceed the statutory maximum on the basis of alleged special factors.[19]

---

18. Pl.'s Reply at 16.

19. Having discerned the absence of special factors, the court need not address plaintiff's request to apply the *Laffey* matrix to attorney fees.

## B. *Cost of Living Adjustment*

Plaintiff also seeks a cost of living adjustment. See 28 U.S.C. § 2412(d)(2)(A)(ii). It is within the court's discretion to apply a cost of living adjustment. *KMS Fusion,* 39 Fed. Cl. at 603 (citing *Oliveira v. United States,* 827 F.2d 735, 744 (Fed.Cir.1987)). When a plaintiff seeks a cost of living adjustment, the "justification for such award is self-evident if the applicant alleges that the cost of living has increased, as measured by the Department of Labor's Consumer Price Index ('CPI')." *Keeton Corrections, Inc. v. United States,* 62 Fed.Cl. 134, 139 (2004) (quoting *California Marine Cleaning,* 43 Fed.Cl. at 733); see also *Meyer v. Sullivan,* 958 F.2d 1029, 1035 n. 9 (11th Cir.1992) (explaining that "[t]he Supreme Court has implied that applying a cost-of-living adjustment under the EAJA is next to automatic").[20] The plaintiff must only overcome a minimal threshold; this court has "decline[d] to impose a requirement than an applicant must do more than request such an adjustment and present a basis upon which the adjustment should be calculated." *California Marine Cleaning,* 43 Fed.Cl. at 733 (citations omitted).

The court sees no reason to deny plaintiff a cost of living adjustment. Plaintiff correctly recognizes March 1996, the effective date of the amended statutory cap, as the baseline for calculating the cost of living adjustment. *Lion Raisins, Inc. v. United States,* 57 Fed. Cl. 505, 519 (2003) (citing *California Marine Cleaning,* 43 Fed.Cl. at 734). While the inquiry begins in March 1996, it ends on the date the services were rendered. *Chiu,* 948 F.2d at 722. The court is permitted to utilize an average inflation figure for the time period in which legal work was performed. *Id.* at 722 n. 10. Defendant offers no opposition to plaintiff's cost of living adjustment. Accordingly, after performing the necessary arithmetic, the court concludes that plaintiff's attorney fees per hour should be adjusted to $149.93.

## VI. *Individual Components*

Defendant has carved out four categories of fees which it believes are unreasonable and should be excluded from any award to plaintiff. First, defendant maintains that any fees incurred prior to December 15, 2003, the date of contract award, should be denied. Second, defendant contends that any fees designated as "case administration" should be rejected. Third, defendant asserts that the number of hours plaintiff spent in connection with an unopposed motion for an enlargement of time was unreasonable. Fourth, defendant avers that plaintiff devoted an excessive number of hours to preparing its motion for costs. Defendant does not take issue with any other individual fee or expense components.

At the outset, while defendant raises superficially appealing arguments by attacking the headings of "case administration," "motion for enlargement of time" and "cost recover stage," defendant does not provide a compelling challenge to the underlying tasks. The court has examined legal work performed under those category headings and finds both the work and the hours expended to be reasonable. *Hensley,* 461 U.S. at 433, 103 S.Ct. 1933 ("It remains for the district court to determine what fee is 'reasonable.' ").

Defendant also contends that plaintiff is not entitled to recover any fees prior to the date the contract was awarded. To support its position, defendant relies on the Federal Circuit's decision in *Oliveira v. United States,* 827 F.2d 735 (Fed.Cir.1987). Defendant's reliance on *Oliveira* is misplaced and its argument fails as it is inconsistent with the overwhelming weight of authority addressing the issue.

It is well-established that a plaintiff is entitled to recover fees and expenses in preparing to file a complaint and to litigate a case before the Court of Federal Claims. *California Marine Cleaning,* 43 Fed.Cl. at 731 ("Defendant's assertion that pre-complaint fees and expenses are per se unrecoverable is plainly incorrect."). The case defendant relies upon, *Oliveira,* confirms that proposition. *Oliveira,* 827 F.2d at 744 (ex-

---

**20.** See also Gregory C. Sisk, *The Essentials of the Equal Access to Justice Act,* 56 LA. L. REV. 1, 128 (1995) (explaining that "courts routinely approve cost-of-living adjustments").

plaining that fees incurred "in preparation for trial" are recoverable). *Oliveira* does not infer or suggest that pre-complaint fees are precluded. See *id.*

The date of contract award is not controlling in this case. Plaintiff was notified on December 8, 2003, by the CO that a sole-source contract would be awarded.[21] Plaintiff could begin preparing for litigation upon hearing the news and, under these circumstances, did not need to wait for the contract award date to pass. Accordingly, plaintiff is entitled to recover fees incurred from December 8, 2003, until December 15, 2003.

### VII. *Preparation of EAJA Application*

Plaintiff maintains that it is entitled to recover attorney fees and costs incurred in preparing its EAJA application. Plaintiff submitted an updated itemized statement enumerating its additional attorney fees and costs in this regard.[22] Defendant rightfully does not oppose this issue. Courts have consistently held that a plaintiff may recover fees and expenses associated with preparing an EAJA application. *Jean*, 496 U.S. at 156, 110 S.Ct. 2316; *Lion Raisins*, 57 Fed.Cl. at 519 n. 17 (citing *Fritz v. Principi*, 264 F.3d 1372, 1376–77 (Fed.Cir.2001)); *KMS Fusion*, 39 Fed.Cl. at 603 (citing *Schuenemeyer v. United States*, 776 F.2d 329, 333 (Fed.Cir. 1985)).

### VIII. *Expenses*

Plaintiff has also requested that the court award the expenses it incurred in litigating this action. Plaintiff seeks to be reimbursed for: (1) paralegal fees; (2) photocopying and binding; (3) messenger and courier services; (4) electronic legal research; (5) telephone bills; (6) travel; (7) lodging; and (8) meals. Plaintiff seeks a total of $30,414.56 in expenses.[23] Defendant does not offer an opposition to plaintiff's request for expenses.

The EAJA provides examples of legal expenses which are recoverable, however, the examples are not an exclusive listing. 28 U.S.C. § 2412(d)(2)(A). The Federal Circuit in *Oliveira* interpreted the EAJA to provide that "the trial court in its discretion, may award only those reasonable and necessary expenses of an attorney incurred or paid in preparation for trial of the specific case before the court, and that these expenses must be those customarily charged to the client where the case is tried." *Oliveira*, 827 F.2d at 744.

This court and other courts have frequently permitted an EAJA applicant to be reimbursed for similar expenditures. See *id.* at 743 (overturning the lower court's conclusion that "cost of printing and binding briefs, and travel, telephone, and postage expenses" were not recoverable); *California Marine Cleaning*, 43 Fed.Cl. at 734 (awarding paralegal fees, taxi fares, and copying expenses); *PCI/RCI*, 37 Fed.Cl. at 791 (explaining that computerized research expenses were recoverable); *RC Constr. Co., Inc. v. United States*, 42 Fed.Cl. 57, 63–64 (1998) (noting that delivery services and travel expenses were recoverable); *Baldi Bros. Constructors v. United States*, 52 Fed.Cl. 78, 88 (2002) (explaining that hotel expenses would have been recoverable if they were properly substantiated). The court, therefore, concludes that the expenses plaintiff seeks are of the sort "customarily charged to the client where the case is tried." *Oliveira*, 827 F.2d at 744.

### IX. *Hensley consideration*

Where "a plaintiff has achieved only partial or limited success, the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount." *Hensley*, 461 U.S. at 436, 103 S.Ct. 1933. In such a case, the court "may attempt to identify specific hours that should be eliminated, or it may simply reduce the award to account for the limited success." *Id.* at 436–37. A pro rata reduction, proportional to plaintiff's award in the underlying action, is an acceptable method for determining an EAJA award. *Garrett*, 2 F.3d at

**21.** Administrative Record, Tab Q.

**22.** See Plaintiff's Report Regarding Fees And Costs Incurred In Pursuing Its Equal Access To Justice Act Motion.

**23.** This amount does not include expenses with respect to plaintiff's civil contempt motion.

1146. A pro rata calculation is not the only or even preferred means of determining the award. The guiding principle requires the court to "compute the appropriate fee as a function of degree of success." *F.J. Vollmer*, 102 F.3d at 599 (internal citations omitted). Nevertheless, "[w]here a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee." *Hensley*, 461 U.S. at 435, 103 S.Ct. 1933.

Plaintiff seeks $187,772.33 in attorney fees [24] and $30,414.56 in expenses and paralegal fees for the initial segment of the litigation. Plaintiff also requests $26,672.55 in attorney fees and $2,272.08 in expenses and costs incurred in connection with its civil contempt motion. After giving due regard to the ultimate results obtained in this lawsuit, the court concludes that the fees and expenses plaintiff requests need to be adjusted so that the award accurately reflects plaintiff's "degree of success." *F.J. Vollmer*, 102 F.3d at 599 (internal citations omitted).

The court ruled against plaintiff in its civil contempt motion and held that defendant had not violated the court's April 13, 2004, opinion and order. *Filtration Dev. Co., LLC v. United States*, 2005 WL 19237 (Fed.Cl. Jan. 4, 2005). As plaintiff did not achieve any success in this aspect of the litigation, those fees and costs incurred in pursuit of that motion will be excluded from plaintiff's EAJA award. *Hensley*, 461 U.S. at 434, 103 S.Ct. 1933 (explaining that the court may ask "did the [party] fail to prevail on claims that were unrelated to the claims on which he succeeded").

Next, with regard to the main portion of the litigation, the court did not adopt plaintiff's argument that the Army's minimum needs encompassed only 80 "A kits" and 80 "B kits." Although the court did entertain plaintiff's argument that the Army should only be permitted to procure the minimum amount necessary to satisfy the emergency situation, it enjoined only a little over one-quarter of the entire procurement. The court does not believe that "plaintiff achieve[d] a level of success that makes the

hours reasonably expended a satisfactory basis for making a fee award." *Id.* While plaintiff obtained favorable results, the court cannot conclude that plaintiff's results can be characterized as excellent. See *id.* at 435, 103 S.Ct. 1933. The court will, therefore, "simply reduce the award to account for the limited success." *Id.* at 436–37, 103 S.Ct. 1933. Given the level of success plaintiff did achieve, however, the court will within its discretion only reduce the attorneys fees and expenses by forty percent.

### Conclusion

For the above-stated reasons, plaintiff's motion for attorney fees and expenses in connection with its civil contempt motion is hereby DENIED. Plaintiff is, however, entitled to an award in the amount of $112,663.40 in attorney fees and $18,248.74 in expenses and paralegal fees. Plaintiff's application pursuant to RCFC 54(d)(2) and the EAJA is hereby GRANTED. The Clerk of the Court is directed to enter judgment for said amount.

The parties shall notify the court by Friday, January 28, 2005, of any portion of the opinion containing proprietary information, national defense or national security concerns, or classified information, that should be redacted prior to publication.

IT IS SO ORDERED.

---

**24.** This figure was calculated by multiplying $149.93, the statutory cap per hour increased to account for a cost of living adjustment, by

1252.40, the total number of hours plaintiff's counsel spent in connection with this case.